# Exhibit C

**Bidding Procedures**

## Bidding Procedures

On July 28, 2010, American Safety Razor Company, LLC, a Delaware limited liability company ("ASR") and its affiliated debtors and debtors in possession (collectively the "Debtors") filed *Debtors' Motion, Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, for Entry of an Order (A) Approving the Sale of Substantially all of the Debtors' Assets Free and Clear of Encumbrances and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket No. __] (the "Motion"). The Motion seeks entry of an order from the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") authorizing and approving a proposed sale (the "Sale") of substantially all of the Debtor' assets (the "Assets") to RZR Acquisition Company LLC (collectively, the "Stalking Horse Bidder") as set forth more fully in that certain asset purchase agreement dated July 28, 2010 (the "Stalking Horse APA"),[1] or to another Qualified Bidder (defined below) that is determined to have made the highest or otherwise best offer for the Assets through a Sale (a "Transaction"). Set forth below are the bidding procedures (the "Bidding Procedures") that the Debtors intend to employ with respect to the consideration of such offers.

## Offers that Will Be Considered

The Debtors are soliciting offers for a Transaction and Qualified Bidders may submit bids for substantially all of the Assets. The Debtors reserve the right to enter into agreements, in consultation with the First Lien Agent,[2] the Second Lien Agent,[3] and the official committee of unsecured creditors (the "Committee"), if any, for a Transaction until the Bid Deadline (as defined below), which agreements, if any, shall be subject to higher or otherwise better bids at the Auction (as defined below).

The Debtors and their advisors, after consulting with the First Lien Agent, the Second Lien Agent and the Committee, if any, shall (i) determine whether any person is a Qualified Bidder, (ii) coordinate due diligence investigations, (iii) receive offers from Potential Bidders,

---

[1] The Stalking Horse APA is annexed as Exhibit A to the Motion (as defined herein). Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Stalking Horse APA.

[2] The term "First Lien Agent" shall mean UBS AG, Stamford Branch, as Administrative Agent under that certain $260,000,000 Credit Agreement, dated as of July 31, 2006 (as amended, restated, supplemented or otherwise modified from time to time, the "First Lien Credit Agreement"), among American Safety Razor Company, LLC, as Borrower, RSA Holdings Corp. of Delaware, as Holdings, the Subsidiary Guarantors party thereto (along with Holdings, as Guarantors), UBS Securities LLC, as Arranger and Bookmanager, UBS AG, Stamford Branch, Issuing Bank, Administrative Agent and Collateral Agent, and certain lenders party thereto, including UBS Loan Finance LLC, as Swingline Lender (collectively, the "First Lien Lenders").

[3] The term "Second Lien Agent" shall mean Cantor Fitzgerald Securities, as successor Administrative Agent to UBS AG, Stamford Branch, under that certain $175,000,000 Credit Agreement, dated as of July 31, 2006, among American Safety Razor Company, LLC, as Borrower, RSA Holdings Corp. of Delaware, as Holdings, and the other guarantors party thereto, as Guarantors, certain lenders party thereto, UBS Securities LLC, as Arranger and Bookmanager and UBS AG, Stamford Branch, as Administrative Agent and Collateral Agent.

and (iv) negotiate any offers made to consummate a Transaction. The Debtors shall have the right, in the exercise of their fiduciary duties, after consultation with the First Lien Agent, the Second Lien Agent and the Committee, if any, to adopt such other rules for the Bidding Procedures (including rules that may depart from those set forth herein) that will better promote the goals of the Bidding Procedures.

## Participation Requirements

Any person that wishes to submit a proposal for a Transaction (a "Potential Bidder") must become a "Qualified Bidder." As a prerequisite to becoming a Qualified Bidder, a Potential Bidder must deliver (unless previously delivered) to the Debtors and their advisors and the advisors to the First Lien Agent, the Second Lien Agent and the Committee, if any, at the addresses specified below, **not later than September 15, 2010,** the following materials:

i. A letter of indication stating the estimated consideration for the Transaction (including any assets to be excluded from such bid, if any, and liabilities to be assumed), clearly indicating total cash consideration to be provided to the Debtors at closing and specifying any deductions from or adjustments to the total cash consideration and which items, if any, the Debtors would be required to pay at closing; and

ii. Sufficient written evidence, as may be requested by the Debtors, to allow the Debtors to determine, in consultation with the First Lien Agent, the Second Lien Agent and the Committee, if any, that the bidder has the financial wherewithal to consummate the proposed Transaction and fund the cash component of the Transaction, if applicable, including, but not limited to, (a) a signed firm commitment for any debt or equity financing that is satisfactory to the Debtors after consultation with the First Lien Agent, (b) a bank account statement showing the ability of a Potential Bidder to fund any required cash component provided herein, (c) satisfy the standards to provide adequate assurance of future performance of any contracts and leases to be assumed and assigned under section 365 of the Bankruptcy Code, and (d) current audited financial statements (or such other form of financial disclosure and credit-quality support or enhancement acceptable to the Debtors) of the Potential Bidder or those entities that will guarantee in full the payment obligations of the Potential Bidder (collectively, the "Financing Documentation"). The Financing Documentation must provide that the commitments described above will be available to the Potential Bidder through the dates set forth in clause (ii) of the Bid Requirements below.

A "Qualified Bidder" is a Potential Bidder that delivers the documents described in subparagraphs (i)-(ii) above and that the Debtors determine, in consultation the First Lien Agent, the Second Lien Agent and the Committee, if any, is reasonably likely (based on Financing Documentation submitted by the Potential Bidder, the availability of financing, experience and other consideration deemed relevant by the Debtors), to submit a bona fide offer and be able to consummate a Transaction if selected as the Successful Bidder. The Stalking Horse Bidder (and the bid with respect to the Stalking Horse Bidder, as set forth in the Stalking Horse APA, the "Stalking Horse Bid") shall be deemed a Qualified Bidder. Not later than three (3) business days

after a Potential Bidder delivers all of the materials required by subparagraphs (i) and (ii) above, the Debtors, in consultation with the First Lien Agent, the Second Lien Agent and the Committee, if any, shall determine and notify the Potential Bidder, if such Potential Bidder is a Qualified Bidder.

**FOR THE AVOIDANCE OF DOUBT, ANY AND ALL PARTIES SHOULD BE AWARE THAT ANY PARTY THAT IS NOT DETERMINED TO BE A QUALIFIED BIDDER WILL NOT BE ALLOWED TO (1) PARTICIPATE IN THE AUCTION UNDER ANY CIRCUMSTANCES OR (2) SUBMIT ANY OFFER AFTER THE BID DEADLINE OR THE AUCTION.**

### Due Diligence

Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that the Debtor determines not to be a Qualified Bidder; *provided, however,* that the Debtors in their discretion may provide information to bidders that the Debtors believe may become Qualified Bidders. The Debtors will afford any Qualified Bidder the time and opportunity to conduct reasonable due diligence; *provided, however,* to the extent deemed necessary or desirable by the Debtors, the Qualified Bidder has executed a confidentiality agreement in form and substance acceptable to the Debtors; *provided further,* that the Debtors shall not be obligated to furnish any due diligence after the Bid Deadline. To the extent the Debtors give any material written information to any bidder that they had not previously provided to the Stalking Horse Bidder, the Debtors shall make such information available to the Stalking Horse Bidder. Neither the Debtors nor any of their respective representatives are obligated to furnish any information to any person other than a Qualified Bidder. Qualified Bidders should contact Lazard Middle Market, LLC if they want to discuss their due diligence or any Transaction they will be considering.

The Debtors shall coordinate all reasonable requests for additional information and due diligence access. All due diligence requests shall be directed to Lazard Middle Market, LLC, 11 West 42nd Street, 29th Floor, New York, NY 10036 (Attn: Andrew Torgove, Jason Cohen and Jeffrey Horowitz), Tel: (212) 758-8575, Email: jeffrey.horowitz@lazardmm.com.

### Bid Deadline

A Potential Bidder that desires to make a bid (and potentially become a Qualified Bidder) shall deliver written copies of its bid and the Required Bid Materials (defined below) to (i) the Debtors, c/o American Safety Razor Company, LLC, 240 Cedar Knolls Road, Cedar Knolls NJ 07927 (Attn: J. Andrew Bolt); (ii) co-counsel to the Debtors, (a) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Attn: Mark Thompson, Esq. and Morris J. Massel, Esq.) and (b) Drinker Biddle & Reath LLP, 1100 N. Market Street, Suite 1000, Wilmington, DE 19801 (Attn: Andrew C. Kassner, Esq. and Howard A. Cohen, Esq.); (iii) investment bankers for the Debtors, Lazard Middle Market, LLC, 11 West 42nd Street, 29th Floor, New York, NY 10036 (Attn: Andrew Torgove and Jason Cohen); (iv) co-counsel to the First Lien Agent, (a) Paul, Hastings, Janofsky & Walker LLP, 600 Peachtree Street, N.E.,

Twenty-Fourth Floor, Atlanta, GA 30308 (Attn: Jesse H. Austin, III) and 75 East 55th Street, New York, NY 10022 (Attn: Leslie A. Plaskon and Aaron M. Klein), and (b) Duane Morris LLP, 1100 North Market Street, Suite 1200, Wilmington, DE 19801 (Attn: Richard W. Riley); and (v) counsel to the Second Lien Agent, Brown Rudnick LLP, Seven Times Square, New York, NY 10036 (Attn: Robert Stark), **not later than 5:00 p.m. (prevailing Eastern time) on September 20, 2010 (the "Bid Deadline")**. If a Committee is appointed, the Debtors will deliver all Required Bid Materials to Committee counsel promptly.

**FOR THE AVOIDANCE OF DOUBT, ANY AND ALL PARTIES SHOULD BE AWARE THAT ANY PARTY THAT DOES NOT SUBMIT A BID BY THE BID DEADLINE WILL NOT BE ALLOWED TO (1) PARTICIPATE IN THE AUCTION UNDER ANY CIRCUMSTANCES OR (2) SUBMIT ANY OFFER AFTER THE BID DEADLINE OR THE AUCTION.**

### Bid Requirements

All bids, other than the Stalking Horse Bid, must include (unless such requirement is waived by the Debtors in consultation with the First Lien Agent, the Second Lien Agent and the Committee, if any) the following information and documents (the "Required Bid Materials"):

   i. A letter stating that the bidder's offer is irrevocable until the first business day after the Assets on which the Qualified Bidder is submitting a bid have been sold pursuant to the closing of the sale or sales approved by the Bankruptcy Court.

   ii. Binding and complete documentation setting forth the Qualified Bidder's proposed Transaction ("Competitive Documentation"). All Qualified Bids must provide (a) a commitment to close within the later of (1) fourteen days after the entry of the Transaction Agreement Approval Order and (2) the expiration or termination of the applicable HSR (defined below) waiting period; (b) a representation that the Qualified Bidder will (1) make all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended ("HSR") and pay the fees associated with such filings and (2) submit all necessary filings under HSR within 2 business days following the entry of the Transaction Agreement Approval Order; and (c) the identity of and contact information for the bidder and full disclosure of any affiliates and any debt or equity financing sources involved in such bid.

   iii. A good faith cash deposit in an amount to be determined by the Debtors, in consultation with the First Lien Agent, the Second Lien Agent and the Committee, if any (the "Good Faith Deposit").

   iv. The bid shall provide for payment in full (a) of all Assumed Liabilities (as defined in the Stalking Horse APA) and (b) in cash the amount set forth in Section 2.2 of the Stalking Horse APA.

   v. Sufficient cash to fund the Wind Down Amount set forth in the Stalking Horse APA.

vi. Redlines of (a) bidder's proposed form of Transaction Agreement Approval Order over the form of such order attached to the Stalking Horse APA and (b) Competitive Documentation over the Stalking Horse APA.

vii. Financing Documentation satisfactory to the Debtors, in consultation with the First Lien Agent, the Second Lien Agent, and the Committee, if any.

viii. The bid shall identify with particularity the Debtors' executory contracts and unexpired leases with respect to which the bidder seeks to receive an assignment and any designation rights it seeks.

ix. The bid shall not request or entitle the bidder to any transaction or break up fee, expense reimbursement, termination or similar type of fee or payment

x. The bid shall include an acknowledgement and representation of the bidder that (a) the sale of the Assets is on an "as is" and "with all faults" basis and without representations, warranties, or guarantees, express, implied or statutory, written or oral, of any kind, nature, or description by the Debtors, their agents, their representatives or their estates, except as otherwise provided in a definitive purchase agreement with the Debtors; and (b) it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, warranties, or guarantees, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or the physical condition of the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures or as set forth in a definitive purchase agreement with the Debtors.

xi. The bid shall not contain any due diligence, financing or regulatory contingencies of any kind (other than a condition that any applicable waiting period under HSR shall have expired or been terminated), though the bid may be subject to the satisfaction of specific conditions in all material respects at closing.

xii. The bid shall fully disclose the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation.

xiii. The bid shall state that the offering party consents to the jurisdiction of the Bankruptcy Court.

xiv. The bid shall include evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the submitted purchase agreement of the bidder.

xv. The bid shall state the specific person(s) whom the Debtors' investment banker, Lazard Middle Market, LLC, should contact in the event the Debtors have any questions or wish to discuss the bid.

A bid received from a Qualified Bidder that includes all of the Required Bid Materials and is received by the Bid Deadline is a "Qualified Bid." The Debtors reserve the right to determine the value of any Qualified Bid and which Qualified Bid constitutes the highest or best offer, in each case after consultation with the First Lien Agent, the Second Lien Agent and the Committee, if any. Notwithstanding the bid requirements detailed above, the Stalking Horse Bid shall be deemed a Qualified Bid. If one or more Qualified Bids are received, the Debtors shall notify, within one business day following receipt thereof: (a) the Stalking Horse Bidder; (b) the First Lien Agent; (c) the Second Lien Agent; (d) Apollo Investment Management, L.P, as mezzanine lender (the "Mezzanine Lender"); and (e) the Committee, if applicable. The First Lien Lenders shall be entitled to credit bid up to the full amount of the Obligations (as defined in the First Lien Credit Agreement) for the Assets pursuant to section 363(k) of the Bankruptcy Code and applicable orders of the Bankruptcy Court, if any.

Between the date the Debtors receive a Qualified Bid and the Auction, the Debtors may discuss, negotiate or seek clarification of any Qualified Bid; provided, however, the Debtors shall consult with the First Lien Agent, the Second Lien Agent and the Committee, if any, with respect to such actions. Without the written consent of the Debtors, a Qualified Bidder may not modify, amend or withdraw its Qualified Bid, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Bid for the Debtors, during the period that such Qualified Bid remains binding as specified herein; provided, however, that any Qualified Bid may be improved at the Auction as set forth herein.

## The Auction and Auction Procedures

If a Qualified Bid, other than that submitted by the Stalking Horse Bidder, has been received by the Debtors, and the Debtors, in consultation with the First Lien Agent, the Second Lien Agent and the Committee, if any, determine that such Qualified Bid is higher or otherwise better than that of the Stalking Horse Bidder, the Debtors may conduct an auction (the "Auction") with respect to all or some of the Assets. In considering whether a Qualified Bid is "higher or otherwise better," the Debtors shall consider, among other things, the amount of consideration, the probability of closing, the amount of time and expense projected to be required to close and the views of the First Lien Agent, the Second Lien Agent and the Committee, if any.

Prior to the Auction, the Debtors and its advisors shall evaluate Qualified Bids and identify the Qualified Bid, in the Debtors' business judgment, after consultation with the First Lien Agent, the Second Lien Agent and the Committee, if any, that is the highest or otherwise best bid (the "Starting Bid"). By no later than 5:00 p.m. (prevailing Eastern Time) on the business day prior to the Auction, the Debtors shall distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

The Auction shall be conducted at the offices of Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 at 10:00 a.m. (prevailing Eastern time) on September 23, 2010 (the "Auction Date"), or such other place and time as the Debtors shall

notify all Qualified Bidders who have submitted Qualified Bids (and the First Lien Agent, the Second Lien Agent and the Committee, if any) and expressed their intent to participate in the Auction as set forth above.

Based upon the terms of the Qualified Bids received, the number of Qualified Bidders participating in the Auction, and such other information as the Debtors determine is relevant, the Debtors may conduct the Auction in any manner (in consultation with the First Lien Agent, the Second Lien Agent and the Committee, if any) that they determine, in the exercise of their business judgment, will maximize the value of the Debtors' estates; <u>provided</u>, <u>however</u>, that such procedures shall include the following:

    i. At the commencement of the Auction, the Debtors shall announce and describe the Starting Bid.

    ii. Bidding at the Auction will begin with the initial highest or otherwise best bid submitted by a Qualified Bidder and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid (a "<u>Subsequent Bid</u>") is submitted by a Qualified Bidder that the Debtors determine is a higher or otherwise better bid than the preceding Subsequent Bid. There shall not be an initial overbid amount by which a Qualified Bid must exceed the Stalking Horse Bid.

    iii. The Debtors may reject any Qualified Bid or Subsequent Bid at the Auction that the Debtors determine: (i) is inadequate or insufficient, (ii) does not conform with the requirements of applicable bankruptcy laws or these Bidding Procedures, (iii) does not provide for, or does not demonstrate, adequate assurance of future performance with respect to leases and other executory contracts to be assumed pursuant to the Qualified Bid, (iv) fails to provide sufficient evidence of financial ability to consummate the Transaction, or (v) is contrary to the best interests of the Debtors and their estates and creditors.

    iv. The Debtors shall announce the material terms of each Subsequent Bid at the Auction and shall disclose the valuation of the total consideration offered in each such Subsequent Bid (and the basis for its determination) in order to provide a floor for further Subsequent Bids.

The Debtors may set opening bid amounts in each round of bidding as the Debtors determine to be appropriate, in consultation with the First Lien Agent, the Second Lien Agent and the Committee, if any. The Auction may be adjourned as the Debtors deem appropriate, in the exercise of their business judgment, after consultation with the First Lien Agent, the Second Lien Agent and the Committee, if any.

Upon the conclusion of the Auction, the Debtors shall promptly review each Qualified Bid on the basis of the financial and contractual terms and the factors relevant to the Sale process, including those factors affecting the speed and certainty of consummating the Transaction as soon as practicable after the conclusion of the Auction and identify, in

consultation with the First Lien Agent, the Second Lien Agent and the Committee, if any, the highest or otherwise best offer for the Assets (to the extent any such bid is acceptable to Debtors a "Successful Bid" and the bidder or bidders making such bid, the "Successful Bidder"). Bidding at the Auction will continue until such time as Successful Bid is selected. At the Transaction Hearing, the Debtors may present the Successful Bid to the Bankruptcy Court for approval at the Transaction Hearing. The Debtors reserve all rights not to submit any bid which is not acceptable to the Debtors, in consultation with the First Lien Agent, the Second Lien Agent and the Committee, if any, for approval by the Bankruptcy Court.

In addition to the Debtors and their advisors, the only parties eligible to participate in the Auction shall be: (i) the Stalking Horse Bidder and its representatives and advisors; (ii) those Qualified Bidders who have submitted a Qualified Bid to the Debtors; and (iii) the Office of the United States Trustee for the District of Delaware. The Stalking Horse Bidder and the Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative.

Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Auction.

If no Qualified Bid is submitted by the Bid Deadline that the Debtors have determined, in consultation with the First Lien Agent, the Second Lien Agent and the Committee, if any, is higher or otherwise better than the Stalking Horse Bid, then the Debtors shall cancel the Auction and accept the Stalking Horse Bid (in which case, the Successful Bid shall be the Stalking Horse Bid, and the Successful Bidder shall be the Stalking Horse Bidder).

Following the selection of the Successful Bid, (i) the Auction shall be closed, (ii) the Debtors shall (A) immediately cease and cause to be terminated any ongoing solicitation, discussions and negotiations with respect to any other bids for the Assets or Transaction proposals and (B) not solicit any inquiries or proposals, or enter into any discussions, negotiations, understandings, arrangements or agreements, relating to any other bid or proposals, and (iii) no additional bids or proposals will be accepted or considered by the Debtors, unless and until the termination of the applicable transaction documents with respect to the Successful Bid by and among the Successful Bidder (or the Back-Up Bid by and among the Back-Up Bidder, as applicable) and the Debtors.

**Acceptance of Qualified Bids**

Subject to the conditions herein, the Debtors shall present the Successful Bid to the Bankruptcy Court at the Transaction Agreement Approval Hearing (as defined below). The Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of the bid. The Debtors will be deemed to have accepted a bid only when the Bankruptcy Court has entered its order approving the Successful Bid (the "Transaction Agreement Approval Order").

**Transaction Hearing**

A hearing (the "Transaction Agreement Approval Hearing") shall be scheduled by the Bankruptcy Court. Following the entry of the Transaction Agreement Approval Order, if the Successful Bidder fails to consummate an approved Transaction within the later of (a) fourteen

days after the entry of the Transaction Agreement Approval Order in the case of a Sale, and (b) the expiration or termination of the applicable HSR waiting periods, the Debtors shall be authorized, but not required, to deem the next highest or otherwise best Qualified Bid (the "Back-Up Bid" and the party submitting the Back-Up Bid, the "Back-Up Bidder"), as disclosed at the Transaction Agreement Approval Hearing, the Successful Bid, and the Debtors shall be authorized, but not required, to consummate the applicable Transaction with the Back-Up Bidder submitting such bid without further order of the Bankruptcy Court. Except as otherwise provided in the Stalking Horse APA, the Back-Up Bid shall remain open until the first business day following the consummation of a Transaction with the Successful Bidder. The Debtors, in the exercise of their business judgment, reserve their right to the extent consistent with the Stalking Horse APA and in consultation with the First Lien Agent, the Second Lien Agent and the Committee, if any, to change the date of the Transaction Agreement Approval Hearing in order to achieve the maximum value for their estates.

### Modifications

The Debtors may, in consultation with the First Lien Agent, the Second Lien Agent and the Committee, if any, (a) determine which Qualified Bid, if any, is the highest or otherwise best offer; and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid because, among other reasons, it is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, if applicable, or (iii) contrary to the best interests of the Debtors and their estates and creditors.

### Return of Good Faith Deposit

The Good Faith Deposit of the Successful Bidder shall, upon consummation of the purchase of all of the Assets, be credited to the purchase price paid for all of the Assets. If the Successful Bidder fails to consummate the purchase of all of the Assets, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, the Debtors to the extent provided in the applicable asset purchase agreement.

The Good Faith Deposit of any unsuccessful Qualified Bidders will be returned within ten (10) business days after consummation of the Sale or upon the permanent withdrawal of the proposed Sale of all of the Assets.

### Miscellaneous

The Auction and Bidding Procedures are solely for the benefit of the Debtors and the Stalking Horse Bidder and nothing contained in the Bidding Procedures shall create any rights in any other person or bidder (including without limitation rights as third party beneficiaries or otherwise) other than the rights expressly granted to a Successful Bidder herein.

The Bankruptcy Court shall have jurisdiction to hear and determine all matters arising from or relating to the implementation of the Bidding Procedures and the Auction (if necessary).