IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------x
                                      )
In re                                    )
                                      )  Chapter 11
AMERICAN SAFETY                )
RAZOR COMPANY, LLC, et al.,[1]  )  Case No. 10-12351 (MFW)
                                      )
        Debtors.                  )  Jointly Administered
                                      )
----------------------------------------------------x  Re: Docket No. 11

**INTERIM ORDER (A) AUTHORIZING DEBTORS TO PAY OR HONOR
PREPETITION OBLIGATIONS TO CERTAIN CRITICAL VENDORS
AND (B) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS
TO HONOR ALL RELATED CHECK AND ELECTRONIC PAYMENT REQUESTS**

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors") for the entry of an order (this "Order") (a) authorizing, but not directing, the Debtors to pay certain prepetition claims of critical vendors, and (b) authorizing and directing financial institutions to receive, process, honor and pay all related checks issued and electronic payment requests; and upon the *Affidavit of J. Andrew Bolt, Executive Vice President and Chief Financial Officer of American Safety Razor Company, LLC, and Blade Acquisition Company, and Vice President and Authorized Officer of the other Debtors, in Support of the First Day Motions*; the Court finding that (i) the Court has

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: American Safety Razor Company, LLC (0207), American Safety Razor Corporation (5475), ASR Holdings, Inc. (6509), Blade Acquisition Company (2053), Industrias Manufactureras ASR de Puerto Rico, Inc. (4894), Megas Beauty Care, Inc. (0321), Megas de Puerto Rico, Inc. (3065), Personna International de Puerto Rico, Inc. (0814), RSA Holdings Corp. of Delaware (3029), RSA Soap Company, Inc. (7635), and Valley Park Realty, Inc. (3691). The following entities are non-debtor foreign affiliates of the Debtors: American Safety Razor Australia Pty Limited; American Safety Razor do Brasil Ltda.; American Safety Razor of Canada Limited; ASR Exportacao, Importacao, Comercio e Industria de Produtos de Barbear Ltda; Personna International CZ s.r.o.; Personna International de Mexico, S.A. de C.V.; Personna International Israel Ltd.; Personna International Limited; Personna International UK Limited; Personna International UK Ltd; and Wolco Holland BV. The corporate address of American Safety Razor Company, LLC is 240 Cedar Knolls Road, Cedar Knolls, NJ 07927.

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and (iii) notice of the Motion was sufficient under the circumstances and that no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors and their estates; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED on an interim basis to the extent provided herein until such time as the Court conducts a final hearing on this matter (the "<u>Final Hearing Date</u>").

2. The Final Hearing Date shall be on August 25, 2010 at 9:30 a.m./~~p.m.~~ prevailing Eastern Time and any objections or responses to the Motion shall be filed on or before seven business days prior to the Final Hearing Date and served on the parties required by Local Rule 2002-1(b).

3. The Debtors' payment of prepetition claims owed to Critical Vendors shall not exceed, in the aggregate, $3 million during the interim period (the "<u>Interim Critical Vendor Cap</u>") from the date of this Order until the date that a final order is entered in this matter, unless otherwise ordered by the Court.

4. The Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay the prepetition claims of Critical Vendors[2] upon such terms and in the manner provided in this Order, and in the ordinary course of business, when due, and not

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2

on an accelerated basis, <u>provided</u>, <u>however</u>, that any vendor that accepts payment pursuant to the authority granted in this Order agrees to the provide the Debtor with goods and merchandise in accordance with the trade terms, practices and programs, including with respect to pricing, in effect between such vendor and the Debtors for the period within 180 days of the Petition Date, or such other trade terms as agreed by the Debtors and such Critical Vendors, or such other trade terms, practices and programs that are at least as favorable as those that were in effect prepetition in the Debtors' sole discretion (the "<u>Customary Trade Terms</u>").

    5.    Any Critical Vendor who accepts payment of all or a portion of their prepetition claims from the Debtor pursuant to this Order shall be deemed to (a) agree to the terms and provisions of this Order and (b) have waived, to the extent so paid, (i) any and all prepetition claims, of any type, kind or priority (including any reclamation claim), against the Debtors, their assets and properties and any funds or amounts held in trust by the Debtors, and (ii) the right to demand a lump-sum payment for amounts outstanding but not yet payable upon consummation of the Debtors' plan of reorganization.

    6.    The Debtors shall undertake all appropriate efforts to cause Critical Vendors to enter into an agreement with the Debtors substantially similar to Exhibit C to the Motion, including the following terms:

> The amount of such Critical Vendor's estimated prepetition trade claims owed by the Debtors, accounting for any setoffs, other credit and discounts thereto, shall be as mutually determined in good faith by the Critical Vendor and the Debtors (but such amount shall be used only for the purposes of this Trade Agreement and shall not be deemed a claim allowed by the Bankruptcy Court and the rights of all interested persons to object to such claim shall be fully preserved until further order of the Bankruptcy Court);

> The Critical Vendor's agreement to be bound by the normal and Customary Trade Terms, practices and programs (including, without limitation, credit limits, pricing, cash discounts, timing of payment, allowances, rebates and other applicable terms and programs), which were

most favorable to the Debtors and in effect between such Critical Vendor and the Debtors on a historical basis for the period within 180 days of the Petition Date, or such other trade terms as agreed by the Debtors and such Critical Vendor, or such other trade terms, practices and programs that are at least as favorable as those that were in effect prepetition in the Debtors' sole discretion;

The Critical Vendor's agreement not to file or otherwise assert against any or all of the Debtors, their estates or any other person or entity, or any of their respective assets or property (real or personal) any lien (each, a "Lien") (regardless of the statute or other legal authority upon which such Lien is asserted), related in any way to any remaining prepetition amounts allegedly owed to the Critical Vendor by the Debtors arising from agreements entered into prior to the Petition Date and, that, to the extent that the Critical Vendor has previously obtained such a Lien, the Critical Vendor shall immediately take all necessary actions to the remove such Lien;

The Critical Vendor's acknowledgement that it has reviewed the terms and provisions of the order granting the relief requested in this Motion and consents to be bound hereby;

The Critical Vendor's agreement that it will not separately assert or otherwise seek payment for reclamation claims outside of the terms of the order granting this Motion unless the Critical Vendor's participation in the trade payments authorized by the order granting this Motion is terminated; provided, that such claims, if thereafter raised by the Critical Vendor as permitted by the order granting this Motion, shall be treated as though raised on the date of the order granting this Motion; and

If either the trade payments authorized by the order granting this Motion or the Critical Vendor's participation therein terminates, or a Critical Vendor who has received payment of a prepetition claim later refuses to continue to supply goods to the Debtors on Customary Trade Terms, subject to defenses, any payments received by the Critical Vendor on account of such Critical Vendor's prepetition claim will be deemed to have been in payment of then outstanding postpetition obligations owed to such Critical Vendor and that such Critical Vendor shall immediately repay to the Debtors any payments made to it on account of such payments exceeding the postpetition obligations then outstanding, without the right of any setoffs, claims, provision for payment of reclamation or trust fund claims or otherwise.

7. Such a letter, once agreed to and accepted by a Critical Vendor, shall be the legally binding contractual arrangement between the parties governing the commercial trade

4

relationship (each, a "Trade Agreement"). The Order is intended to authorize, but shall not require, the Debtors to enter into Trade Agreements, it being the express intention of this Court that the Debtors shall enter into Trade Agreements only when the Debtors determine, in the exercise of their reasonable business judgment, that it is appropriate to do so.

8. The Debtors are granted the authority to elect, in their sole discretion, to waive the conditions set forth in the Motion for payment of a claim within the Interim Critical Vendor Cap (the "Waiver") and to conditionally pay the claim of a non-conforming vendor (the "Non-Conforming Vendor") that threatens to withhold shipments unless its prepetition claim is paid. After electing to grant a Waiver to a Non-Conforming Vendor, Debtors are authorized to file a Notice of Waiver and proposed order to show cause (the "Order to Show Cause") with this Court within five (5) business days of payment pursuant to the Waiver. At the first regularly scheduled hearing occurring at least five (5) days following entry of the Order to Show Cause by this Court, the Non-Conforming Vendor shall be required to appear before this Court and demonstrate why the Non-Conforming Vendor is not in violation of section 362 of the Bankruptcy Code. Should this Court determine that the Non-Conforming Vendor violated the automatic stay, the payments made by the Debtors shall be disgorged pursuant to the Waiver, plus attorney's fees and interest accrued on such amount at the rate specific, within three (3) business days of entry of the order holding such Non-Conforming Vendor in violation.

9. The form of Notice of Waiver attached to the Motion as Exhibit D and the form of Order to Show Cause attached to the Motion as Exhibit E are hereby approved by this Court in all respects for use in accordance with the provisions of the foregoing paragraph.

10. All Trade Agreements shall be deemed to have terminated, together with the other benefits to Critical Vendors as contained in this Order, upon entry of an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

11. The requirements set forth in Rule 6003(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") are satisfied by the contents of the Motion and the First Date Affidavit.

12. In accordance with this Order and any other order of this Court, each of the financial institutions at which the Debtors maintain their accounts relating to the payment of the claims that the Debtors request authority to pay in the Motion are authorized and directed to honor checks presented for payment and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in such accounts.

13. Notwithstanding anything to the contrary contained herein, (a) any payment made, or authorization contained, hereunder shall be subject to the requirements of any order of this Court approving the Debtors' debtor in possession financing (a "DIP Order"), and (b) any claim for which payment is authorized pursuant to this Order that is treated as an administrative expense of the Debtors' estates shall be and is subject and subordinate to the claims, liens, security interests and priorities granted to the DIP Facility Lenders and the DIP Facility Agent (each as defined in the DIP Order), subject to the Carve Out (as defined in the DIP Order), in accordance with and subject to the terms of the applicable DIP Order, and payment on any such claim shall be subject to the applicable requirements of the DIP Order and any other order of the Court authorizing the Debtors' use of cash collateral.

14. Nothing in the Motion or this Order, nor as a result of the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as: (a) an admission as

to the validity or priority of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim; or (c) an approval or assumption of any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code.

15. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

16. Notwithstanding the possible applicability of Rules 6004(h) of the Bankruptcy Rules, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

17. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: July 30, 2010
Wilmington, Delaware

THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE