## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x
                )
In re                )
                )    Chapter 11
AMERICAN SAFETY      )
RAZOR COMPANY, LLC, et al.,[1]  )    Case No. 10-12351 (MFW)
                )
    Debtors.          )    Jointly Administered
                )
-------------------------------------------------------x  **Re: Docket No. 17**

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364, AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES AND (V) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)

This matter is before the Court on the motion filed by American Safety Razor Company, LLC and the other debtors and debtors in possession (collectively, the "<u>Debtors</u>") in the above captioned chapter 11 cases (collectively, the "<u>Cases</u>") dated July 28, 2010 (the "<u>Motion</u>") requesting entry of an Interim Order (as defined below):

      (1)      for immediate authorization and approval, pursuant to sections 105, 361, 362, and 364 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002,

---

[1]    The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: American Safety Razor Company, LLC (0207), American Safety Razor Corporation (5475), ASR Holdings, Inc. (6509), Blade Acquisition Company (2053), Industrias Manufactureras ASR de Puerto Rico, Inc. (4894), Megas Beauty Care, Inc. (0321), Megas de Puerto Rico, Inc. (3065), Personna International de Puerto Rico, Inc. (0814), RSA Holdings Corp. of Delaware (3029), RSA Soap Company, Inc. (7635), and Valley Park Realty, Inc. (3691). The following entities are non-debtor foreign affiliates of the Debtors: American Safety Razor Australia Pty Limited; American Safety Razor do Brasil Ltda.; American Safety Razor of Canada Limited; ASR Exportacao, Importacao, Comercio e Industria de Produtos de Barbear Ltda; Personna International CZ s.r.o.; Personna International de Mexico, S.A. de C.V.; Personna International Israel Ltd.; Personna International Limited; Personna International UK Limited; Personna International UK Ltd; and Wolco Holland BV. The corporate address of American Safety Razor Company, LLC is 240 Cedar Knolls Road, Cedar Knolls, NJ 07927.

4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for American Safety Razor Company, LLC ("ASR"), as Borrower[2], to obtain postpetition financing up to the principal amount of $25,000,000 (inclusive of a $7,500,000 sublimit for Letters of Credit) (the "DIP Facility"), and for the Guarantors to guarantee the payment of Borrower's obligations thereunder and under this Interim Order, including, without limitation, principal, accrued interest, unpaid fees and expenses, and all other Obligations and amounts due from time to time under the documents referred to below (collectively, the "Postpetition Indebtedness"), from UBS AG, Stamford Branch ("UBS") as Administrative Agent (the "DIP Administrative Agent"), General Electric Capital Corporation as Collateral Agent and Syndication Agent (the "DIP Collateral Agent" and together with the DIP Administrative Agent and the other agents party thereto, the "DIP Facility Agent"), UBS Securities LLC as lead arranger (the "Arranger"), and UBS as Issuing Bank, together with the other lenders (each in their lender capacity, collectively, the "DIP Facility Lenders") to (A) fund, among other things, ongoing working capital, general corporate, letters of credit and other financing needs of the Debtors, (B) pay certain transaction fees, and other costs and expenses of administration of the Cases, (C) provide (i) the First Lien Agent and First Lien Lenders (each as defined below) adequate protection as set forth in this Interim Order and (ii) the Second Lien Agent and Second Lien Lenders (each as defined below) adequate protection as set forth in this Interim Order, and (D) pay fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) owed to the DIP Facility Agent and the DIP Facility Lenders under the DIP Facility and the other DIP Facility Documents (as defined below);

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Credit Agreement.

(2)     authorizing and empowering Borrower and Guarantors to execute and enter into the DIP Facility Documents and to perform such other and further acts as may be required in connection with the DIP Facility Documents;

(3)     requesting, pursuant to section 364(c) and (d) of the Bankruptcy Code, that the financing under the DIP Facility:

a.     have priority over any and all administrative expenses, including, without limitation, the kind specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other consensual or non-consensual lien, levy or attachment, whether incurred in the Cases or any successor case, which allowed super-priority claims of the DIP Facility Agent and DIP Facility Lenders shall be payable from and have recourse to all prepetition and postpetition property of the Debtors, except for the Carve-Out (as defined below) and, to the extent funded, the Wind Down Amount[3], as provided for herein (the "DIP Facility Superpriority Claim"); and

b.     be and be deemed immediately secured by valid, binding, continuing, enforceable, fully perfected and unavoidable first priority senior priming security interests in, and liens upon, all prepetition and postpetition assets of the Debtors and Guarantors, whether now existing or hereafter acquired, and a junior priority security interest in all assets otherwise encumbered by Permitted Senior Liens (as defined below) (collectively, the "DIP Facility Liens"), and to the extent not otherwise included, all proceeds, tort claims, insurance claims, and other rights to payments not otherwise included in the foregoing and products of the

---

[3]     As used herein, the term Wind Down Amount shall have the meaning ascribed to it in that certain Asset Purchase Agreement, dated as of July 28, 2010, between American Safety Razor Company, LLC, RZR Acquisition Company LLC, RZR Holding Corporation, and UBS AG, Stamford Branch in its capacity as First Lien Agent on behalf of the First Lien Lenders.

foregoing and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing (collectively, the "Collateral"), as provided for by section 364(c) and (d) of the Bankruptcy Code, subject only to (i) the Carve-Out, and, to the extent funded, the Wind Down Amount, as provided for herein, and (ii) Permitted Senior Liens in the Collateral; provided, however, that the Collateral shall not include avoidance actions under Chapter 5 of the Bankruptcy Code and/or the proceeds thereof pursuant to sections 502(d), 544, 545, 547, 548, 550 or 553 of the Bankruptcy Code (the "Avoidance Actions");

(4)     seeking the Court's authorization pursuant to sections 361(a), 363(c), and 364(d)(1) of the Bankruptcy Code to authorize use of Cash Collateral (as defined under section 363 of the Bankruptcy Code) and provide adequate protection from such use of Cash Collateral and the terms of the financing being granted herein to the (i) First Lien Agent and First Lien Lenders (collectively, the "First Lien Secured Parties") as provided in this Interim Order on account of their claims under the First Lien Credit Agreement (as defined below) and (ii) Second Lien Agent and the Second Lien Lenders (collectively, the "Second Lien Secured Parties") on account of their claims under Second Lien Credit Agreement (as defined below);

(5)     requesting, pursuant to Bankruptcy Rule 4001, that an interim hearing (the "Interim Hearing") on the Motion be held for this Court to consider entry of an interim order (the "Interim Order") authorizing the Debtors, on an interim basis, to use Cash Collateral and obtain interim financing in the principal amount of $10,000,000 million under the DIP Facility from the DIP Facility Agent and DIP Facility Lenders; and

(6)     requesting, pursuant to Bankruptcy Rule 4001, that a final hearing (the "Final Hearing") be held before this Court to consider entry of an order approving (a) the DIP Facility as set forth in the DIP Credit Agreement (as defined below) in the aggregate principal

amount of up to $25,000,000 and (b) the grant of adequate protection to the (i) First Lien Secured Parties as provided for in this Interim Order and (ii) Second Lien Secured Parties (together with the First Lien Secured Parties and Second Lien Secured Parties, the "Prepetition Secured Parties") as provided for in this Interim Order, all on a final basis (the "Final Order"), as set forth in the Motion.

Pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1), due and sufficient notice under the circumstances of the Motion and the Interim Hearing having been provided by the Debtors as set forth in paragraph J below, and the Interim Hearing having been held on July __, 2010, and upon consideration of all the pleadings filed with this Court; and any objections to the relief requested in the Motion that have not been resolved are hereby overruled; and upon the record made by the Debtors at the Interim Hearing and the *Affidavit of J. Andrew Bolt, Executive Vice President and Chief Financial Officer of American Safety Razor Company, LLC and Blade Acquisition Company, and Vice President and Authorized Officer of the Other Debtors, in Support of First Day Motions*, and after due deliberation and consideration and good and sufficient cause appearing therefor;

IT IS HEREBY FOUND:

A. On July 28, 2010 (the "Petition Date"), the Debtors each commenced in this Court a case under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B. Concurrently with the filing of the Motion, the Debtors filed a motion seeking joint administration of the Cases. No request for the appointment of a trustee or examiner has been made in these Cases. No committees have been appointed or designated.

C. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. Without prejudice to the rights of any non-debtor party in interest as provided in paragraph 6 herein, the First Lien Obligors (as defined below) acknowledge, agree and stipulate that:

(i) Pursuant to that certain $260,000,000 Credit Agreement, dated as of July 31, 2006, among American Safety Razor Company, LLC, a Delaware limited liability company, as borrower, RSA Holdings Corp. Of Delaware, a Delaware corporation ("Holdings"), the Subsidiary Guarantors party thereto, the lenders party thereto from time to time including, without limitation, the Swingline Lender (collectively, the "First Lien Lenders"), the other agents party thereto and UBS, as administrative agent and as collateral agent (in such capacity, the "First Lien Agent") (as amended, restated, supplemented or otherwise modified from time to time, the "First Lien Credit Agreement" and together with all "Loan Documents" (as defined in the First Lien Credit Agreement) and all other agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, the "First Lien Financing Documents"), the First Lien Lenders made loans and advances to, issued letters of credit for and/or provided other financial accommodations to or for the benefit of the First Lien Obligors from time to time;

(ii) Pursuant to the First Lien Financing Documents, ASR Holdings and the Subsidiary Guarantors (as defined in the First Lien Credit Agreement) (collectively, the "First Lien Obligors") were, as of the Petition Date, jointly and severally indebted to the First Lien Secured Parties on account of the First Lien Indebtedness (as defined below) exclusive of

accrued but unpaid interest, costs, fees and expenses, in the approximate principal amount of (i) $243,625,032.05 (comprised of revolving loans in the amount of $34,325,000.00, inclusive of $525,000.00 in outstanding, undrawn Letters of Credit, and term loans in the amount of $209,300,032.05). For purposes of this Interim Order, the term "First Lien Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the First Lien Financing Documents (including, without limitation, all "Obligations" as defined in the First Lien Credit Agreement), and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the applicable provisions of the First Lien Financing Documents), and any and all obligations and liabilities, contingent or otherwise, owed in respect of the letters of credit or other obligations outstanding thereunder;

(iii)    Pursuant to the First Lien Financing Documents, the First Lien Obligors granted to and/or for the benefit of the First Lien Secured Parties first priority and continuing pledges, liens and security interests (the "Prepetition First Liens") to secure the First Lien Indebtedness and any guarantees thereof, in and upon substantially all of the First Lien Obligors' property and assets whether real or personal, tangible or intangible and wherever located, whether now or hereafter existing or acquired, and all the proceeds, products, offspring, rents and profits thereof (the "Prepetition Collateral"); and

(iv)    As of the Petition Date and immediately prior to giving effect to this Interim Order, (a) the First Lien Financing Documents are valid and binding agreements and obligations of the First Lien Obligors, and the Prepetition First Liens (i) constitute valid, binding, enforceable and perfected priority security interests and Liens, subject only to the Liens

permitted under the First Lien Credit Agreement, but only to the extent such permitted Liens are valid, enforceable, non-avoidable Liens and security interests that are perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), which are not subject to avoidance, reduction, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and which are senior in priority to the Prepetition First Liens under applicable law and after giving effect to any applicable subordination or intercreditor agreements (such liens, the "Permitted Senior Liens"), and (ii) are not subject to avoidance, reduction, disallowance, impairment, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (b) the First Lien Indebtedness constitutes the legal, valid and binding obligation of First Lien Obligors, enforceable in accordance with its terms, (i) no objection, offset, defense or counterclaim of any kind or nature to the First Lien Indebtedness exists, and (ii) the First Lien Indebtedness, and any amounts paid at any time to the First Lien Agent or any First Lien Lender on account thereof or with respect thereto, are not subject to avoidance, reduction, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(v) For valid and sufficient consideration, the First Lien Obligors have waived, discharged and released any right they may have to challenge any of the First Lien Indebtedness and the security for those obligations, and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against the First Lien Agent and First Lien Lenders and/or any of their respective affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees.

(vi)    The claims arising from or in connection with the First Lien Indebtedness are "allowed claims" within the meaning of section 502 of the Bankruptcy Code.

E.    Without prejudice to the rights of any non-debtor party in interest as provided in paragraph 6 herein, the Second Lien Obligors (as defined below) acknowledge, agree and stipulate that:

(i)    Pursuant to that certain $175,000,000 Credit Agreement, dated as of July 31, 2006, by and among American Safety Razor Company, LLC, Holdings, and the Subsidiary Guarantors party thereto (collectively, the "Second Lien Obligors"), Cantor Fitzgerald Securities, as successor administrative agent (the "Second Lien Agent") and together with the First Lien Agent, the "Prepetition Agents") and the financial institutions from time to time parties thereto (collectively, the "Second Lien Lenders", and together with the First Lien Lenders, the "Prepetition Lenders") (as amended, supplemented, waived and otherwise modified from time to time, the "Second Lien Credit Agreement" and together with all "Loan Documents" (as defined in the Second Lien Credit Agreement) and all other agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, the "Second Lien Financing Documents"), the Second Lien Lenders made loans and advances to and/or provided other financial accommodations to or for the benefit of the Second Lien Obligors from time to time.

(ii)    Pursuant to the Second Lien Financing Documents, the Second Lien Obligors were, as of the Petition Date, jointly and severally indebted to the Second Lien Secured Parties on account of the Second Lien Indebtedness (as defined below) exclusive of accrued but unpaid interest, costs, fees and expenses, in the approximate aggregate principal amount of $175,000,000.    For purposes of this Interim Order, the term "Second Lien

Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the Second Lien Financing Documents (including, without limitation, all "Obligations" as defined in the Second Lien Credit Agreement) and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the applicable provisions of the Second Lien Financing Documents), and any and all obligations and liabilities, contingent or otherwise outstanding thereunder (together with the First Lien Indebtedness, the "Prepetition Indebtedness");

(iii)     Pursuant to the Second Lien Financing Documents, the Second Lien Obligors granted to and/or for the benefit of the Second Lien Secured Parties second priority and continuing pledges, liens and security interests (the "Prepetition Second Liens" and, together with the Prepetition First Liens, the "Prepetition Liens") to secure the Second Lien Indebtedness and any guarantees thereof in and to the Prepetition Collateral; and

(iv)     As of the Petition Date and immediately prior to giving effect to this Interim Order, (a) the Second Lien Financing Documents are valid and binding agreements and obligations of the Second Lien Obligors, and the Prepetition Second Liens (i) constitute valid, binding, enforceable and perfected second priority security interests and Liens, subject only to the Prepetition First Liens and Permitted Senior Liens, and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (b) the Second Lien Indebtedness constitutes the legal, valid and binding obligation of the Second Lien Obligors, enforceable in accordance with its terms, (i) no objection, offset, defense or counterclaim of any kind or nature to the Second Lien Indebtedness exists, and (ii) subject to the Intercreditor Agreement (as defined below), the

Second Lien Indebtedness, and any amounts paid at any time to Second Lien Agent or any Second Lien Lender on account thereof or with respect thereto, are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

F.      Pursuant to that certain Intercreditor Agreement, dated as of July 31, 2006 (as amended, restated, supplemented or otherwise modified prior to the Petition Date, the "Intercreditor Agreement"), the First Lien Agent and the Second Lien Agent are parties to an intercreditor arrangement that governs the respective rights, obligations and priorities of the First Lien Lenders and the Second Lien Lenders with respect to their interests in the Collateral. Pursuant to the Intercreditor Agreement, the Prepetition First Liens are senior in priority to the Prepetition Second Liens on all Prepetition Collateral. Further, under the Intercreditor Agreement, the Second Lien Agent and the Second Lien Lenders are deemed to consent to the financing under the DIP Facility and, upon approval of the DIP Facility, the DIP Facility Liens shall have first priority in the Collateral, the Prepetition First Liens shall have second priority in the Collateral, and the Prepetition Second Liens shall have third priority in the Collateral.

G.      The Debtors' businesses have an immediate need to obtain the DIP Facility and use Cash Collateral in order to have adequate liquidity, in addition to cash on hand, to ensure, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational, financial and general corporate needs. The immediate availability of credit under the DIP Facility will provide confidence to the Debtors' creditors, including its trade vendors and foreign creditors, and the Debtors' employees that will enable and encourage them to continue their relationships with the

Debtors and, thereby, enhance the value of the Debtors' estates. The access of the Debtors to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations (including letters of credit and other credit support) and use of Cash Collateral is vital to the preservation and maintenance of the going concern values of the Debtors and to the success of these Cases. Without such credit and use of Cash Collateral, the Debtors' estates would be irreparably harmed.

H.     The Debtors are unable to obtain sufficient financing from sources other than the DIP Facility Lenders on terms more favorable than under the DIP Facility and all the documents and instruments delivered pursuant thereto or in connection therewith (inclusive of the DIP Credit Agreement, the "DIP Facility Documents"). The Debtors have been unable to obtain sufficient unsecured credit solely under section 503(b) (1) of the Bankruptcy Code as an administrative expense. New credit is unavailable to the Debtors without (i) providing the DIP Facility Agent for the benefit of the DIP Facility Lenders (a) the DIP Facility Superpriority Claim and (b) the DIP Facility Liens as provided herein and in the DIP Facility Documents and (ii) without concurrently providing for the adequate protection to the (a) First Lien Secured Parties on the terms and conditions as set forth herein and (a) Second Lien Secured Parties on the terms and conditions as set forth herein.

I.     The DIP Facility Agent, DIP Facility Lenders, the First Lien Agent and the First Lien Lenders have agreed and consented to, or not opposed to, as applicable, provide financing to the Debtors and permit the use of Cash Collateral by the Debtors subject to (i) the entry of this Interim Order, (ii) the terms and conditions of the DIP Credit Agreement, and (iii) findings by the Court that such postpetition financing and use of Cash Collateral is essential to the Debtors' estates, that the terms of such financing and use of Cash Collateral were

negotiated in good faith and at arm's length, and that the DIP Facility Liens and DIP Facility Superpriority Claim, and other protections granted pursuant to this Interim Order and the DIP Facility Documents will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code. Each of the DIP Facility Agent, DIP Facility Lenders, the First Lien Agent and First Lien Lenders have acted in good faith in, as applicable, negotiating, consenting to and in agreeing to provide the postpetition financing arrangements and use of Cash Collateral (or otherwise not opposing such use) contemplated by this Interim Order and the other DIP Facility Documents and the reliance of each of the DIP Facility Agent, DIP Facility Lenders, and the First Lien Secured Parties on the assurances referred to above is in good faith.

     J.  Telephonic, facsimile notice or overnight mail notice of the Interim Hearing and the proposed entry of this Interim Order has been provided to (i) the thirty (30) largest creditors listed in the Debtors' consolidated list of creditors (excluding insiders), (ii) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (iii) counsel to the DIP Administrative Agent, (iv) counsel to the First Lien Agent, (v) counsel to the Second Lien Agent, (vi) counsel for the Debtors' prepetition mezzanine credit facility; (vii) each of the financial institutions listed in the Debtors' motion to continue their cash management system[4]; (viii) all known parties asserting a lien against the Collateral, (ix) the Internal Revenue Service, (x) the Pension Benefit Guaranty Corporation, (xi) the United States Environmental Protection Agency, (xii) any applicable state environmental agency, and (xiii) any other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or are required to receive notice under the

---

[4] Debtors' Motion For Entry Of Interim And Final Orders Authorizing Debtors To (I) Continue Use Of Existing Bank Accounts And Business Forms; (II) Open New Debtor In Possession Accounts; And (III) Continue Conducting Ordinary Course Intercompany Transactions, dated July 28, 2010.

Bankruptcy Rules, ((i) through (xiii), the "Notice Parties").  Under all the exigent circumstances, the requisite notice of the Motion and the relief requested thereby and this Interim Order has been provided in accordance with Bankruptcy Rule 4001, which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitation, sections 102(1) and 364 of the Bankruptcy Code, and no other notice need be provided for entry of this Interim Order.

K.      The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b) (2) and 4001(c) (2).  Absent entry of this Interim Order, the Debtors' businesses, properties and estates will be immediately and irreparably harmed.

L.      The ability of the Debtors to finance their respective operations and the availability to the Debtors of sufficient working capital and other financial and general corporate liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations, including letters of credit and credit support, and use of Cash Collateral is in the best interests of the Debtors and their respective creditors and estates.  The interim financing and use of Cash Collateral authorized hereunder is necessary to avoid immediate irreparable harm to the Debtors' businesses, properties and estates and to allow the orderly continuation of the Debtors' businesses.

M.      Based on the record presented by the Debtors to this Court:  (i) the terms of the DIP Facility and use of Cash Collateral are the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duty, and are supported by reasonably equivalent value and fair consideration; and (ii) the DIP Facility and use of Cash Collateral have been negotiated in good faith and at arm's length among the Debtors and the DIP Facility Agent, the DIP Facility Lenders, the First Lien Agent and First Lien Lenders, and any credit extended, letters of credit issued, loans made, credit support provided

and other financial accommodations extended to the Debtors by the DIP Facility Lenders and use of Cash Collateral by the Debtors shall be deemed to have been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

N.     None of the Prepetition Agents or Prepetition Lenders has opposed the terms and conditions of this Interim Order, including the priming under section 364(d) of the Bankruptcy Code as provided for herein. The consent and deemed consent of the Prepetition Secured Parties granted herein is expressly limited to (i) the Debtors' use of Cash Collateral solely on the terms and conditions set forth in this Interim Order and (ii) the postpetition financing being provided by the DIP Facility Agent and DIP Facility Lenders as contemplated by this Interim Order and the DIP Credit Agreement. Nothing in this Interim Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Prepetition Secured Parties are or will be adequately protected with respect to any non-consensual use of Cash Collateral or priming of the Prepetition Liens.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.     <u>Disposition</u>. The Motion is granted as set forth in this Interim Order. Any objections that have not previously been withdrawn are hereby overruled upon the merits. This Interim Order shall immediately become effective upon its entry.

2.     <u>Authorization to Borrow</u>. Upon execution and delivery of that certain Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement (the "<u>DIP Credit Agreement</u>") by and among the Borrower, the Guarantors, the DIP Facility Agent, and the DIP Facility Lenders, in substantially the form annexed to the Motion and provided that the Debtors are not in default under the terms of this Interim Order, the Borrower is immediately authorized to borrow (and receive other extensions of credit) under the DIP Facility from the DIP Facility

Lenders up to $10,000,000 (together with interest, fees, charges and expenses payable under the DIP Facility Documents), pursuant to the terms and conditions of the DIP Credit Agreement and use such Borrowings and proceeds in accordance with the terms of the DIP Credit Agreement, the 13-Week Budget, and this Interim Order. Upon execution and delivery of the DIP Facility Documents, the DIP Facility Documents shall constitute legal, valid, and binding obligations of the Debtors and Guarantors party thereto, enforceable against the Debtors and each Guarantor in accordance with their terms. Upon entry of the Final Order, additional financing and Borrowings under the DIP Credit Agreement will be made to (i) fund the Debtors' working capital and other general corporate needs and (ii) pay such other amounts required or allowed to be paid pursuant to the DIP Credit Agreement, this Interim Order and any other orders of this Court. Upon entry of the Final Order, any outstanding amounts in letters of credit issued pursuant to the First Lien Credit Agreement shall be deemed to be issued under the DIP Credit Agreement.

3. <u>DIP Facility Superpriority Claim</u>. For all of the Debtors' Obligations and Postpetition Indebtedness arising under the DIP Facility and the DIP Facility Documents, the DIP Facility Lenders and the DIP Facility Agent are granted, pursuant to section 364(c)(1) of the Bankruptcy Code, subject only to the Carve-Out and, to the extent funded, the Wind Down Amount, the allowed DIP Facility Superpriority Claim which claim shall be payable from and have recourse to, in addition to the Collateral, any unencumbered prepetition or postpetition property of the Debtors whether now existing or hereafter acquired. The DIP Facility Superpriority Claim shall be deemed legal, valid, binding, enforceable, and perfected claims, not subject to subordination, impairment or avoidance, for all purposes in the Cases and any successor case.

4. <u>DIP Facility Liens</u>. As security for the repayment of the Postpetition Indebtedness, pursuant to sections 364(c)(2), (c)(3), and (d) of the Bankruptcy Code, the DIP Administrative Agent, on behalf of itself and the DIP Facility Lenders, is hereby granted (without the necessity of the execution by the Debtors or the filing or recordation of mortgages, security agreements, lock box agreements, financing statements, or otherwise) the DIP Facility Liens on and in the Collateral and all proceeds thereof (subject to the Carve-Out), which liens are valid, binding, enforceable and fully perfected as of the date hereof, not subject to subordination, impairment or avoidance, for all purposes in the Cases and any successor case; <u>provided, however,</u> to the extent funded, the DIP Facility Liens shall not attach to the Wind Down Amount. The DIP Facility Liens granted herein shall prime and be senior in all respects to the Prepetition Liens and the Replacement Liens (as defined below) pursuant to section 364(d) of the Bankruptcy Code and upon entry of this Interim Order all possessory collateral held by the Prepetition Agents shall be deemed to have been transferred to the DIP Administrative Agent and all lockbox, blocked account and similar agreements shall be deemed assigned to the DIP Administrative Agent, on behalf of the DIP Facility Lenders. Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Facility Liens shall be junior only to the Permitted Senior Liens; <u>provided, however,</u> the DIP Facility Liens shall be senior in all respects to and prime the (i) First Lien Secured Parties' liens, claims and interests under the First Lien Financing Documents and (ii) Second Lien Secured Parties' liens, claims and interests under the Second Lien Financing Documents, in each case including the Prepetition Liens and Replacement Liens.

5. <u>Carve-Out</u>. Subject to the terms and conditions contained in this paragraph, the DIP Facility Liens, DIP Facility Superpriority Claim, the adequate protection as provided for herein and liens and claims held by the Prepetition Secured Parties shall be subject

to the following: (i) unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a); (ii) allowed professional fees and expenses of the Debtors and any official committee of unsecured creditors (the "Committee) appointed in the Cases (but excluding any transaction, restructuring, completion, success or similar fees) (the "Professional Fees") incurred to the extent consistent with the 13-Week Budget, but unpaid, prior to delivery of a notice of an Event of Default (such Professional Fees, the "Accrued Claims" and such notice, the "Carve-Out Notice"); and (iii) Professional Fees incurred subsequent to delivery of the Carve-Out Notice to the extent consistent with the 13-Week Budget in an aggregate amount not to exceed $4,000,000 (collectively, (i)–(iii), the "Carve-Out"). The Carve-Out shall exist at all times, but only be triggered and payable upon the occurrence of an Event of Default under the DIP Facility Documents and the DIP Administrative Agent's delivery of a Carve-Out Notice to the Debtors, counsel for the Debtors, and counsel to the Committee, if appointed. Notwithstanding anything herein to the contrary, no Prepetition Collateral, Collateral, proceeds thereof, or Cash Collateral, or any portion of the Carve-Out or financing provided under the DIP Facility shall include, apply to, or be available for any fees or expenses incurred by any party, including the Debtors' estates or the Committee, if appointed, in connection with (i) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the DIP Facility Agent or any of the DIP Facility Lenders, including, without limitation, challenging the amount, validity, extent, perfection, priority, characterization, or enforceability of, or asserting any counterclaim, defense, or offset to the Postpetition Indebtedness, the Prepetition First Liens, the DIP Facility Superpriority Claim, or the security interests and DIP Facility Liens of the DIP Facility Agent in respect thereof, (ii) asserting any claims or causes of action, including, without limitation, claims or actions to hinder or delay the DIP Facility

Agent's or any DIP Facility Lender's assertion, enforcement or realization on the Collateral in accordance with the DIP Facility Documents or this Interim Order or any Avoidance Actions against the DIP Facility Agent, any DIP Facility Lender, or any First Lien Secured Party, or (iii) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any of the First Lien Secured Parties, including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any counterclaim to the First Lien Indebtedness, or the First Lien Adequate Protection granted herein; provided, however, up to the amount of $50,000 shall be permitted to be used by professionals of the Committee, if appointed, to investigate the liens, claims and interests of the First Lien Secured Parties. The foregoing shall not be construed as consent to the allowance of any fees and expenses referred to above and shall not affect the right of the Debtors, the DIP Facility Agent, the DIP Facility Lenders, the Prepetition Secured Parties, the Committee (if appointed), the U.S. Trustee, or other parties in interest to object to the allowance and payment of such amounts. Payment of any portion of the Carve-Out shall not, and shall not be deemed to, (i) reduce any Debtor's obligations owed to any of the DIP Facility Agent, DIP Facility Lenders, and/or First Lien Secured Parties or (ii) subordinate, modify, alter or otherwise affect any of the liens and security interests of such parties in the Collateral or Prepetition Collateral (or their respective claims against the Debtors or First Lien Obligors, as applicable).

6.     Investigation Rights.  Notwithstanding anything herein to the contrary, including the First Lien Obligors' stipulations and releases herein solely as they relate to the First Lien Secured Parties, all non-debtor parties in interest (including any trustee appointed or elected in the cases prior to the Investigation Termination Date (as defined below)) shall have until seventy-five (75) days from the date of entry of this Interim Order (the "Investigation

Termination Date") to investigate the validity, perfection, and enforceability of the Prepetition Liens and the amount and allowability of the Prepetition Indebtedness or to assert any other claims or causes of action against any of Prepetition Secured Parties; provided that the Investigation Termination Date may be extended upon (a) the written consent of both the Debtors and (x) with respect to the First Lien Secured Parties, the First Lien Agent (on behalf of the First Lien Lenders) and (y) with respect to the Second Lien Secured Parties, the Second Lien Agent (on behalf of the Second Lien Lenders), as applicable and each in their sole discretion, or (b) an entry of an order by this Court for "cause" shown. If the Committee, if appointed, or any non-debtor party in interest hereafter vested with authority by the Court, determines that there may be a challenge by the Investigation Termination Date, prior to the Investigation Termination Date, such Committee or other non-debtor party in interest hereafter vested with authority by the Court shall be permitted to file and prosecute an objection or otherwise initiate an appropriate action or adversary proceeding (including a motion seeking authority to file an action) on behalf of the Debtors' estates setting forth the basis of any such challenge, claim or cause of action (each, a "Challenge"). If no Challenge is filed prior to the Investigation Termination Date (or such other later date as extended as provided above), then the agreements, acknowledgements, releases and stipulations contained in paragraphs D and E of this Interim Order shall be irrevocably binding on all the estates, the Committee, if appointed, and all parties in interest (including without limitation a receiver, administrator, or trustee appointed in any of the Cases or any successor case or in any jurisdiction) without further action by any party or this Court, and the Committee and all other parties in interest (including without limitation a receiver, administrator, or trustee appointed in any of the Cases or any successor case or in any jurisdiction) shall thereafter be forever barred from bringing any Challenge with respect to the

First Lien Secured Parties or Second Lien Secured Parties, as applicable. If any complaint is timely filed on or before the applicable termination date (or any amendment to such complaint as may be allowed thereafter), all other claims and actions against the First Lien Secured Parties or Second Lien Secured Parties, as applicable, not expressly asserted in such complaint or amended complaint shall be deemed, immediately and without further notice, motion or application to, order of, or hearing before, this Court, to have been forever relinquished, discharged, released and waived. Nothing in this Interim Order confers standing on any party, other than the Committee, if appointed and its motion for standing approved, to file or prosecute such claims and actions described herein. The First Lien Secured Parties reserve their rights to oppose any motion by the Committee for standing to file or prosecute such claims. Notwithstanding anything herein to the contrary, if the Committee has been appointed and upon entry of a Final Order, subject to the rights of the First Lien Secured Parties to oppose the Committee's standing, only the Committee shall be entitled to bring a Challenge on behalf of the Debtors' estates against any of the First Lien Secured Parties; no other party in interest shall be entitled to investigate the validity, amount, perfection, priority, or enforceability of the Prepetition First Liens and First Lien Indebtedness, or to assert any other claims or causes of action held by the Debtors' estates against any of the First Lien Secured Parties.

7. <u>Limitation on Additional Surcharges</u>. Subject to entry of the Final Order, with the exception of the Carve-Out and, to the extent funded, the Wind Down Amount, and except as otherwise permitted by the DIP Facility, neither the Collateral, Prepetition Collateral nor any DIP Facility Agent, DIP Facility Lender, or any First Lien Secured Parties shall be subject to surcharge, pursuant to sections 105, 506(c), or 552 of the Bankruptcy Code or otherwise, by the Debtors or any other party in interest without the prior written consent of the

DIP Administrative Agent and First Lien Agent and no such consent shall be implied from any other action, inaction, or acquiescence by such parties in this proceeding, including but not limited to funding of the Debtors' ongoing operation by the DIP Facility Agent and DIP Facility Lenders. The "equities of the case" exception contained in section 552(b) of the Bankruptcy Code shall be deemed waived. Upon entry of the Final Order, the DIP Facility Agent, DIP Facility Lenders and the First Lien Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral or Prepetition Collateral.

8. <u>Use of Cash Collateral</u>. Upon entry of this Interim Order, to the extent the Debtors have cash on hand as of the Petition Date (the "<u>Petition Date Cash</u>"), the First Lien Agent, on behalf of the First Lien Lenders, and the Second Lien Agent, on behalf of the Second Lien Lenders, under the Intercreditor Agreement, have consented or are deemed to consent to the Debtors' use of Cash Collateral up to the amount of the Petition Date Cash, for the operation of their businesses in accordance with the 13-Week Budget, the DIP Facility and this Interim Order. Upon the Debtors' use or deemed use of the full amount of the Petition Date Cash, provided the conditions precedent under the DIP Credit Agreement are met, the Debtors shall be authorized to use Borrowings and proceeds of Collateral to fund the Debtors' operation of their businesses in accordance with the terms of the DIP Facility and this Interim Order.

9. <u>Adequate Protection of First Lien Secured Parties</u>. In consideration for the use of Cash Collateral and the priming of the First Lien Agent's and First Lien Lenders' liens, claims and interests in the Prepetition Collateral (solely upon the terms and conditions of this Interim Order), the First Lien Secured Parties shall receive the following (collectively, the "<u>First Lien Adequate Protection</u>"):

(a)     Adequate Protection Liens.  To the extent there is a diminution in the value of the First Lien Lenders' interests in the Prepetition Collateral (whether the reason for such diminution is as a result of, arises from, or is attributable to, any or all of the imposition of the automatic stay (including, without limitation, any diminution in value of such interests in the Prepetition Collateral prior to the First Lien Agent (on behalf of the First Lien Lenders) seeking vacation of the automatic stay or the Court granting such relief), the priming of the Prepetition First Liens, the use of Cash Collateral or the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Collateral), the First Lien Agent, on behalf of the First Lien Lenders, is granted replacement liens (the "First Lien Replacement Liens") in the Prepetition Collateral, which First Lien Replacement Liens are valid, binding, enforceable and fully perfected as of the Petition Date without the necessity of the execution, filing or recording by the First Lien Obligors or the First Lien Agent of security agreements, pledge agreements, financing statements, or other agreements, and which shall be subordinate only to (i) the Carve-Out, (ii) to the extent funded, the Wind Down Amount, (iii) DIP Facility Liens and (iv) Permitted Senior Liens, and shall be equivalent to a lien granted under section 364(c) of the Bankruptcy Code, and which such First Lien Replacement Liens shall cover assets, interest, and proceeds of the First Lien Obligors that are or would be collateral under the First Lien Financing Documents if not for Bankruptcy Code section 552(a), and all cash and cash equivalents (with the exception of the Avoidance Actions and proceeds thereof).

(b)     Administrative Claim.  The First Lien Agent, on behalf of itself and the First Lien Lenders, is hereby granted in each of the First Lien Obligors' Cases an allowed administrative claim (the "First Lien Administrative Claim") under Bankruptcy Code section 507(b) with respect to all adequate protection obligations, to the extent that the First Lien

Replacement Liens do not adequately protect the diminution in the value of the First Lien Lenders' interests in the Prepetition Collateral from the Petition Date, and such First Lien Administrative Claim shall be junior and subordinate only to the DIP Facility Superpriority Claim and the Carve-Out. The First Lien Administrative Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, except, to the extent funded, the Wind Down Amount.

(c)     <u>Access</u>.  In accordance with the terms of the First Lien Credit Agreement, the First Lien Agent and its professionals shall be afforded continued reporting as to Collateral amounts and reasonable access to the Collateral and the First Lien Obligors' business premises, during normal business hours, for purposes of verifying the Debtors' compliance with the terms of this Interim Order as it pertains to the First Lien Agent and First Lien Lenders.

(d)     <u>Adequate Protection Payments</u>.  The Debtors shall timely pay to the First Lien Agent from Cash Collateral or Borrowings under the DIP Facility amounts as they accrue in connection with the First Lien Indebtedness (the "<u>Adequate Protection Payments</u>"), including, without limitation, the current cash payment of interest as provided for herein, cash management fees, expenses (including legal and professional fees as provided below) and charges and letter of credit fees and commissions.  The payment of interest shall be at the times provided for in the First Lien Financing Documents (i) in cash at the current rate in effect on the day before the Petition Date (the "<u>Current Interest Rate</u>") plus (ii) the accrual of interest at the Default Rate (as defined in the First Lien Credit Agreement), which, for the avoidance of doubt, shall be an Obligation that accrues under the First Lien Credit Agreement.

(e)     <u>Application of Payments</u>.  To the extent that any cash payments of interest and charges to the First Lien Agent pursuant to this Interim Order are not allowed under

section 506(b) of the Bankruptcy Code, and at the time of such disallowance there is outstanding principal owed under the First Lien Credit Agreement, such payments shall be recharacterized and applied as payments of principal owed under the First Lien Credit Agreement.

(f)     Right to Credit Bid.  Upon approval of the Final Order, the First Lien Agent (on behalf of the First Lien Lenders) shall have the right to "credit bid" the allowed amount of the First Lien Lenders' claims during any sale of all or substantially all of the Prepetition Collateral, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

(g)     The First Lien Secured Parties may petition this Court for any such additional protection they may reasonably require with respect to the First Lien Indebtedness or otherwise, including, without limitation, their rights to request additional adequate protection of their interests in the Prepetition Collateral or the Cash Collateral or relief from or modification of the automatic stay extant under section 362 of the Bankruptcy Code.

10.     Adequate Protection of Second Lien Secured Parties.  In consideration for the use of Cash Collateral and the priming of the Second Lien Agent's and Second Lien Lenders' liens, claims and interests in the Prepetition Collateral (solely upon the terms and conditions of this Interim Order), the Second Lien Secured Parties shall receive the following (collectively, the "Second Lien Adequate Protection"):

(a)     Adequate Protection Liens.  To the extent there is a diminution in the value of the Second Lien Lenders' interests in the Prepetition Collateral (whether the reason for such diminution is as a result of, arises from, or is attributable to, any or all of the imposition of the automatic stay (including, without limitation, any diminution in value of such interests in

the Prepetition Collateral prior to the Second Lien Agent (on behalf of the Second Lien Lenders) seeking vacation of the automatic stay or the Court granting such relief), the priming of the Prepetition Second Liens, the use of Cash Collateral or the physical deterioration, consumption, use, sale, disposition, shrinkage, or decline in market value of the Prepetition Collateral), the Second Lien Agent, on behalf of the Second Lien Lenders, is granted replacement liens (the "Second Lien Replacement Liens" and, together with the First Lien Replacement Liens, the "Replacement Liens") in the Prepetition Collateral, which Second Lien Replacement Liens are valid, binding, enforceable and fully perfected as of the Petition Date without the necessity of the execution, filing or recording by the Second Lien Obligors or the Second Lien Agent of security agreements, pledge agreements, financing statements, or other agreements, and which shall be subordinate only to the Carve-Out, to the extent funded, the Wind Down Amount, the DIP Facility Liens, the Prepetition First Liens, the Permitted Senior Liens and the First Lien Replacement Liens and shall be equivalent to a lien granted under section 364(c) of the Bankruptcy Code, and which such Second Lien Replacement Liens shall cover assets, interest, and proceeds of the Second Lien Obligors that are or would be collateral under the Second Lien Financing Documents if not for Bankruptcy Code section 552(a), and all cash and cash equivalents (with the exception of the Avoidance Actions and proceeds thereof).

      11.    <u>Reimbursement of Fees and Expenses</u>. The Debtors shall promptly reimburse the First Lien Agent and the First Lien Lenders and the DIP Facility Agent and the DIP Lenders for their reasonable costs, fees (including, without limitation, reasonable attorneys' and financial advisors' fees and expenses), charges, and expenses incurred in connection with the Cases (as provided under the First Lien Financing Documents or under the DIP Facility, as applicable, whether incurred prepetition or postpetition, within ten (10) days (if no written

objection is received within such ten (10) day period) after such professional has delivered a detailed summary invoice to counsel for the Debtors.  A copy of each invoice submitted shall be delivered by the DIP Administrative Agent and the First Lien Agent to the U.S. Trustee and counsel to the Committee (if appointed) at the same time the invoice is delivered to counsel for the Debtors.  Any written objection to such fees or expenses must contain a specific basis for the objection and a quantification of the undisputed amount of the fees and expenses invoiced; failure to object with specificity or to quantify the undisputed amount of the invoice subject to such objection will constitute a waiver of any objection to such invoice.  None of such costs, fees, charges, and expenses shall be subject to Court approval or required to be maintained in accordance with the United States Trustee Guidelines and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided, that any such accrued but unpaid costs, fees, charges, and expenses shall be paid to the First Lien Agent and First Lien Lenders and DIP Facility Agent and DIP Facility Lenders upon the earlier of the (i) closing date of a 363 Sale or (ii) effective date of a chapter 11 plan; provided, further, that the Court shall have jurisdiction to determine any dispute concerning such invoices; provided, however, if an objection to a professional's invoice is timely received, the Debtors shall only be required to pay the undisputed amount of the invoice and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute.

   12. <u>Restrictions on the Debtors</u>.  Other than the Carve-Out, to the extent funded, the Wind Down Amount, and the Permitted Senior Liens, no claim or Lien having a priority superior or *pari passu* with those granted by this Interim Order to the DIP Administrative Agent, the DIP Facility Lenders or Prepetition Secured Parties shall be granted

by any Debtor or Guarantor, while any portion of the DIP Facility (or refinancing thereof), adequate protection or the commitment thereunder remains outstanding without the written consent of the DIP Facility Agent. Except as expressly permitted by the DIP Credit Agreement and this Interim Order, the Debtors will not, at any time during the Cases, grant mortgages, security interests, or liens in the Collateral or any portion thereof to any other parties pursuant to section 364(d) of the Bankruptcy Code or otherwise.

13.     <u>Additional Perfection Measures</u>.  The DIP Facility Agent, DIP Facility Lenders and Prepetition Secured Parties shall not be required to file financing statements, mortgages, deeds of trust, security deeds, notices of lien, or similar instruments in any jurisdiction or effect any other action to attach or perfect the security interests and liens granted under the DIP Facility Documents and this Interim Order (including, without limitation, the taking possession of any of the Collateral, or the taking of any action to have security interests or liens noted on certificates of title or similar documents).  Notwithstanding the foregoing, the DIP Facility Agent, DIP Facility Lenders and the Prepetition Secured Parties may, in their sole discretion, file this Interim Order or such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments or otherwise confirm perfection of such liens, security interests, and mortgages without seeking modification of the automatic stay under section 362 of the Bankruptcy Code and all such documents shall be deemed to have been filed or recorded at the time of and on the Petition Date, with the priorities set forth herein.

14.     <u>Access to Collateral – No Landlord's Liens</u>.  Upon entry of the Final Order, notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Facility Agent, for the ratable benefit of the DIP Facility Lenders, contained in this Interim Order or the DIP Facility Documents, or otherwise available at law or

in equity, and subject to the terms of the DIP Credit Agreement, upon written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing under the DIP Facility Documents, the DIP Facility Agent may, subject to any separate agreement by and between such landlord and the DIP Facility Agent (the "Separate Agreement"), enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and, subject to the Separate Agreement, shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder; provided that, subject to the Separate Agreement, the DIP Facility Agent shall only pay rent of the Debtors that first accrues after the DIP Facility Agent's written notice referenced above and that is payable during the period of such occupancy by the DIP Facility Agent, calculated on a per diem basis. Nothing herein shall require the DIP Facility Agent to assume any lease as a condition to the rights afforded to the DIP Facility Agent in this paragraph.

15. <u>Automatic Stay</u>. (a) Subject only to the provisions of the DIP Credit Agreement and without further order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Facility Agent and DIP Facility Lenders to exercise, upon the occurrence and during the continuance of any Event of Default (as defined and provided for in Article 8.01 of the DIP Credit Agreement), all rights and remedies provided for in the DIP Facility Documents (including, without limitation and without prior notice, the right to freeze monies or balances in the Debtors' accounts or set off monies or balances of the Debtors in accounts maintained by the DIP Facility Agent or any DIP Facility Lender, the right to charge default rate of interest, terminate commitments and cease funding under the DIP Credit Agreement and termination of any Cash Collateral use); provided, however, that prior to the exercise of any enforcement or

liquidation remedies against the Collateral (other than as set forth above), the DIP Administrative Agent shall be required to give five (5) business days prior written notice provided to the Debtors, counsel to the Debtors, the Committee's counsel (if appointed), and the U.S. Trustee. Notwithstanding the occurrence of an Event of Default or termination of the Commitments under the DIP Credit Agreement or anything herein, all of the rights, remedies, benefits, and protections provided to the DIP Facility Agent and DIP Facility Lenders under the DIP Facility Documents and this Interim Order shall survive the Final Maturity Date. The Debtors and/or the Committee shall be entitled to seek an expedited hearing regarding an Event of Default or termination of the Commitments under the DIP Credit Agreement; provided, however, that the only issue to be determined at such hearing is whether an Event of Default has occurred and is continuing. This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay as provided hereunder.

16.   Binding Effect.  The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Facility Agent, the DIP Facility Lenders, the Prepetition Secured Parties, the Debtors, and each of the foregoing parties' respective successors and assigns, including any trustee hereafter appointed for the estate of any of the Debtors, whether in these Cases or in the event of the conversion of any of the Cases to a liquidation under chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Interim Order.

17.   Survival.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order (i) confirming any plan of reorganization in any of the Cases (and, to the extent not satisfied in full in cash, the Postpetition Indebtedness shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the

Bankruptcy Code, each of the Debtors having hereby waived such discharge), (ii) converting any of the Cases to a chapter 7 case unless permitted under the DIP Facility Documents, or (iii) dismissing any of the Cases unless permitted under the DIP Facility Documents, and the terms and provisions of this Interim Order as well as the DIP Facility Superpriority Claims, the DIP Facility Liens, and the adequate protection granted pursuant to this Interim Order and/or the DIP Facility Documents shall continue in full force and effect notwithstanding the entry of any such order, and such claims and liens shall maintain their priority as provided by this Interim Order, and the DIP Facility Documents and to the maximum extent permitted by law until all of the Postpetition Indebtedness is indefeasibly paid in full in cash and discharged.

18.    <u>After Acquired Property</u>.  Except as otherwise provided in this Interim Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors after the Petition Date, including, without limitation, all Collateral pledged or otherwise granted to the DIP Facility Agent, on behalf of themselves and the DIP Facility Lenders, pursuant to the DIP Facility Documents and this Interim Order, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable lien as of the Petition Date which is not subject to subordination under section 510(c) of the Bankruptcy Code or other provision or principles of applicable law.

19.    <u>Access to the Debtors</u>.  In accordance with the provisions of access in the DIP Facility Documents, the Debtors shall permit representatives, agents, and/or employees of the DIP Administrative Agent and its counsel to have reasonable access to their premises and records during normal business hours (without unreasonable interference with the proper

operation of the Debtors' businesses) and shall cooperate, consult with, and provide to such representatives, agents, and/or employees all such information as they may reasonably request.

20. <u>Authorization to Act</u>. Each of the Debtors is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements, mortgages and financing statements), and to pay interest, fees and all other amounts as provided under this Interim Order and the DIP Facility, which may be reasonably required or necessary for the Debtors' full and timely performance under the DIP Facility and this Interim Order, including, without limitation:

(a) the execution of the DIP Facility Documents;

(b) the modification or amendment of the DIP Credit Agreement or any other DIP Facility Documents without further order of this Court, in each case, in such form as the Debtors, the DIP Facility Agent, and the DIP Facility Lenders may agree in accordance with the terms of the DIP Facility; <u>provided</u>, <u>however</u>, that notice of any material modification or amendment (including any waiver of any Event of Default) shall be subject to approval by this Court; and

(c) the non-refundable payments to the DIP Facility Agent or the DIP Facility Lenders, as the case may be, of the fees referred to in the DIP Credit Agreement and the Fee Letters, and reasonable costs and expenses as may be due from time to time, including, without limitation, reasonable attorneys' and other professional fees and disbursements as provided in the DIP Facility Documents.

21. <u>Insurance Policies</u>. Upon entry of this Interim Order, the DIP Administrative Agent and DIP Facility Lenders shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy

maintained by the Debtors which in any way relates to the Collateral. Any insurance proceeds or other receipts from any source (excluding other authorized payments provided for herein) paid to any of the Prepetition Secured Parties shall be immediately delivered to the Debtors and subject to the DIP Facility Liens and provisions of the DIP Credit Agreement.

22. <u>Subsequent Reversal</u>. If any or all of the provisions of this Interim Order or the DIP Facility Documents are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court: (i) such modification, vacatur, amendment, or stay shall not affect the validity of any obligation of any Debtor or Guarantor to the DIP Facility Agent, DIP Facility Lenders or Prepetition Secured Parties that is or was incurred prior to such party receiving written notice of the effective date of such modification, vacatur, amendment, or stay (the "<u>Effective Date</u>"), or the validity, enforceability or priority of the DIP Facility Superpriority Claims, DIP Facility Liens, adequate protection or other grant authorized or created by this Interim Order and the DIP Facility Documents; and (ii) the Postpetition Indebtedness and adequate protection pursuant to this Interim Order and the DIP Facility Documents arising prior to the Effective Date shall be governed in all respects by the original provisions of this Interim Order and the DIP Facility Documents, and the validity of any such credit extended or security interest granted pursuant to this Interim Order and the DIP Facility Documents and use of Cash Collateral is and shall be protected by section 364(e) of the Bankruptcy Code.

23. <u>Effect of Dismissal of Cases</u>. If the Cases are dismissed, converted or substantively consolidated, then neither the entry of this Interim Order nor the dismissal, conversion or substantive consolidation of these Cases shall affect the rights of the DIP Facility Agent, DIP Lenders and the Prepetition Secured Parties (to the extent of adequate protection

provided hereunder) under their respective documents or this Interim Order, and all of the respective rights and remedies thereunder of the DIP Facility Agent, DIP Lenders and the Prepetition Secured Parties (to the extent of adequate protection provided hereunder) shall remain in full force and effect as if the Cases had not been dismissed, converted, or substantively consolidated. If an order dismissing any of the Cases is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Facility Liens and DIP Facility Superpriority Claim granted to and conferred upon the DIP Facility Agent and DIP Facility Lenders and the protections afforded to the DIP Facility Agent and/or the DIP Facility Lenders pursuant to this Interim Order and the DIP Facility Documents shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Postpetition Indebtedness shall have been indefeasibly paid and satisfied in full in cash and, with respect to outstanding undrawn letters of credit, cash collateralized in accordance with the provisions of the DIP Credit Agreement (and that such DIP Facility Liens, DIP Facility Superpriority Claim and other protections shall, notwithstanding such dismissal, remain binding on all interested parties), and (ii) the adequate protection granted to and conferred upon the Prepetition Secured Parties shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order and the Intercreditor Agreement until such adequate protection has been satisfied.

24. <u>Findings of Fact and Conclusions of Law</u>. This Interim Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon the entry thereof.

25. <u>Controlling Effect of Interim Order</u>. To the extent any provision of this Interim Order conflicts with any provision of the Motion, any prepetition agreement or any

document executed in connection with the DIP Facility, the provisions of this Interim Order shall control.

26. _Final Hearing._ A final hearing on the Motion shall be heard before this Court on **August** _25_, **2010 at** _9:30_ _a_.**m. (prevailing Eastern Time)** at the United States Bankruptcy Court for the District of Delaware, Courtroom _4_, 824 North Market Street, 6th Floor, Courtroom #_4_, Wilmington, Delaware 19801.

27. _Adequate Notice._ The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rule 4001(c)(2). The Debtors shall promptly mail or fax copies of this Interim Order and notice of the Final Hearing to the Notice Parties and all landlords of the Debtors. Any party-in-interest objecting to the relief sought in the Final Order shall submit any such objection in writing and file same with the Court (with a courtesy copy to chambers) and serve (so as to be received) such objection no later than _August 18_, **2010 at** _4:00_ _p_.**m. (Prevailing Eastern Time)** on the following:

(a) **Simpson Thacher & Bartlett LLP,** 425 Lexington Avenue, New York, New York 10017 (Attn: Mark J. Thompson, Esq., and Morris J. Massel, Esq.), proposed counsel to Debtors and Debtors-in-Possession;

(b) **Drinker Biddle & Reath LLP,** 1100 N. Market Street, Suite 1000, Wilmington, DE 19801 (Attn: Andrew C. Kassner, Esq. and Howard A. Cohen, Esq.), proposed counsel to Debtors and Debtors-in-Possession;

(c) **Paul Hastings Janofsky & Walker, LLP**, 600 Peachtree Street, Suite 2400, Atlanta, Georgia 30308 (Attn: Jesse H. Austin, III, Esq.) and 75 East 55th Street, New York, NY 10022 (Attn: Leslie A. Plaskon, Esq. and Aaron M. Klein, Esq.), counsel to the DIP Administrative Agent and First Lien Agent;

(d) **Duane Morris LLP**, Suite 1200, 1100 North Market Street, Wilmington, Delaware, 19801 (Attn: Richard W. Reilly, Esq.), Delaware counsel to the DIP Administrative Agent and First Lien Agent; and

(e) **Office of the United States Trustee for the District of Delaware**, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Jane M. Leamy, Esq.).

Dated: July 30, 2010
      Wilmington, Delaware

THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE