IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
|  | Case No. 10-12351 (MFW) |
| AMERICAN SAFETY RAZOR COMPANY, LLC, et al., | Related to Docket No. 28 |
| Debtors | Jointly Administered |

**MOTION BY THE SECOND-LIEN LENDERS (I) PURSUANT TO 11 U.S.C. §§ 102 AND 105, BANKRUPTCY RULE 9006(c)(1), AND LOCAL RULE 9006-1(e) FOR AN ORDER (A) SHORTENING THE TIME FOR NOTICE OF THE HEARING TO CONSIDER THE EMERGENCY CROSS-MOTION REQUESTING: (I) AUTHORITY TO COMMENCE AN INVESTIGATION OF THE DEBTORS' AUCTION PROCESS PURSUANT TO BANKRUPTCY RULE 2004; (II) APPOINTMENT OF AN EXAMINER; AND/OR (III) APPOINTMENT OF A CHAPTER 11 TRUSTEE, AND (B) PURSUANT TO 11 U.S.C. §§ 102 AND 105 AND BANKRUPTCY RULE 9006(c)(1), FOR AN ORDER PERMITTING THE FILING AFTER THE RESPONSE DEADLINE OF THE OBJECTION OF THE SECOND-LIEN LENDERS TO THE DEBTORS' SALE MOTION[1]**

The Second-Lien Lenders, institutions collectively holding approximately 27.6% of the $178.1 million "second-lien" bank debt owed by the above-captioned debtors (the "Debtors" or "ASR"), by and through their undersigned counsel, hereby (A) move (the "Motion to Shorten") for the entry of an order pursuant to 11 U.S.C. §§ 102 and 105, Rule 9006(c)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9006-1(e) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") shortening the time for notice of the hearing to consider the Emergency Cross-Motion Requesting: (I) Authority to Commence an Investigation of the Debtors' Auction Process Pursuant to Bankruptcy Rule 2004; (II) Appointment of an Examiner; and/or (III) Appointment of a Chapter 11 Trustee (the "Cross-Motion") and (B) move (the

---

[1] The Second-Lien Lenders are GSO/Blackstone Debt Funds Management LLC, as Collateral Manager, and BlackRock Kelso Capital Corporation.

"Motion to File Late Objection") for the entry of an order permitting the Second-Lien Lenders to file the Objection of the Second-Lien Lenders to the Debtors' Sale Motion (the "Sale Objection") after the response deadline. In support thereof, the Second-Lien Lenders respectfully state as follows:

**CAUSE EXISTS TO EXPEDITE CONSIDERATION OF THE CROSS-MOTION**

1. Local Rule 9006-1(c)(i) normally requires fourteen (14) days' notice prior to the hearing date for motions served by hand delivery. See Del. Bankr. L.R. 9006-1(c)(i). However, Local Rule 9006-1(e) allows the Court to issue an order shortening this period upon a request specifying the exigencies justifying shortened notice. See Del. Bankr. L.R. 9006-1(e); see also Fed. R. Bankr. P. 9006(c)(1) (permitting Court to shorten notice "for cause shown"). By the Motion to Shorten, the Second-Lien Lenders request the Court to shorten the notice period in Local Rule 9006-1(c)(i) to eight (8) days.

2. By the Cross-Motion, the Second-Lien Lenders request three alternative forms of relief, each of which is intended to ensure a more open process and correct adjudication. First, the Second-Lien Lenders request authority to conduct an investigation of the Debtors' "auction" process pursuant to Bankruptcy Rule 2004. The examination would primarily cover how the Debtors and Lazard have run the process, what has been communicated to potential bidders and refinancing sources, what bids have been received, and what efforts have been undertaken to insulate management's present deal with the First-Lien Lenders from alternative bidding. Second, in conjunction with or as an alternative to the foregoing relief, the Second-Lien Lenders request the appointment of an examiner to consider these issues and offer an objective report to the Court. Third, also in conjunction with or as an alternative, the Second-Lien Lenders request the appointment of a Chapter 11 trustee to oversee the conclusion of the Chapter 11 process. Finally, the Second-Lien Lenders request adjournment of the relief requested in the Debtors'

Sale Motion pending evidence or an examiner/trustee report that process errors have been fully corrected.

3. The Second-Lien Lenders submit that sufficient cause exists to justify shortening the notice with respect to the Cross-Motion, as requested herein. In particular, the Second-Lien Lenders have become aware of what appears to be a far more attractive offer from a third party. However, it appears that management is manufacturing excuses, quietly trying to "pocket-veto" the alternative bid. Also troubling, management has pursued certain aggressive strategies obviously intended to alienate and silence second-lien creditors. As one example, and as explained more fully in the Cross-Motion, the Debtors have insisted that the details of the alternative not be shared with the Second-Lien Lenders or their professionals (all of whom are bound by existing and highly restrictive confidentiality agreements). This blatant obstruction is, unfortunately, part of a broader pattern of obstruction employed by the Debtors during the course of this case apparently to grease the skids for the credit bid transaction. In short, the Debtors' sale process appears to have been conducted in such a matter as to ensure that the First-Lien Lenders are able to obtain the company – with all of its upside potential – through a credit bid that will provide no recovery at all to the holders of the second-lien debt.

4. The Second-Lien Lenders do not believe that expedited consideration of the Cross-Motion will cause prejudice to the Debtors or any other parties-in-interest. To the contrary, if the alternative bid that has come to the Second-Lien Lenders' attention is permitted to be examined, and a fair sale process is permitted to be administered, it would inure to the benefit of the Debtors' major constituencies, as explained more fully in the Cross-Motion.[2]

---

[2] The Cross-Motion/Sale Objection contains a summary of what the Second-Lien Lenders understand to be the principal terms of the alternative bid. The Second-Lien Lenders understand that the Debtors maintain that the terms of that bid are confidential. Accordingly, the Second-Lien Lenders have requested to file the

5. Moreover, the necessity for the filing of the Cross-Motion is a result of the Debtors' own conduct. Specifically, it was the Debtors' own actions that resulted in the Second-Lien Lenders not becoming aware of the existence of the alternative bid until recently. The Debtors insisted – and continue to insist – that the details of this alternative bid not be shared with the Second-Lien Lenders or their professionals. The Debtors' management instead has continued to press forward in its headlong rush to sell ASR in a Section 363 sale to the first-lien lenders in a credit bid.

6. Finally, the Debtors and other parties in interest would still be able to object to the Cross-Motion. The mere filing of the two motions does not give rise to those motions being granted automatically.

7. In light of these circumstances, the Second-Lien Lenders submit that cause exists for the Court to shorten the notice as requested herein pursuant to Local Rule 9006-1(e), and to schedule the Cross-Motion for the September 28, 2010 sale hearing date.

**CAUSE EXISTS TO PERMIT THE SALE OBJECTION TO BE FILED AFTER THE RESPONSE DATE**

8. By the Motion to File Late Objection, the Second-Lien Lenders request the Court to extend the deadline for the filing of objections to the Debtors' Motion, Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, for Entry of an Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of Encumbrances and (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (the "Sale Motion") in order to permit the Second Lien Lenders to file the Sale Objection.

---

Cross-Motion/Sale Objection temporarily under seal. The Second-Lien Lenders , however, would be happy to have sunlight disinfect this process and have these issues dealt with on the public record.

9. The Notice of Hearing [Docket No. 63] with respect to the Sale Motion states that objections to the Sale Motion were to be filed by September 15, 2010 at 4:00 p.m. (Eastern).

10. However, Bankruptcy Rule 9006(b)(1) provides that a Court may extend a deadline if a party's failure to act by the deadline was a result of "excusable neglect." Specifically, that rule states:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(1).

11. The rule authorizing bankruptcy courts to accept late filings when the failure to act is a result of "excusable neglect" contemplates that courts are permitted, when appropriate, to accept tardy filings caused by inadvertence, mistake, or carelessness, as well as (most importantly here) by intervening circumstances beyond the party's control. See Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380, 388 (1993). This Court has recognized that a "finding of excusable neglect is based on equity and depends on the particular circumstances and facts of the case." In re Garden Ridge Corp., 348 B.R. 642, 645 (Bankr. D. Del. 2006) (citing Pioneer, 507 U.S. at 395).

12. In Pioneer, the Supreme Court was asked to review the decision by the United States Court of Appeals for the Sixth Circuit to reverse the decisions of both the bankruptcy court and district court that excusable neglect did not exist for filing tardy proofs of claim when an attorney, experiencing some disruption in his practice due to his withdrawal from his former law firm, inadvertently failed to file a proof of claim by the claims bar date. See 507 U.S. at 384-87.

13. In reviewing the issue of whether the Court of Appeals properly found that excusable neglect existed, the Supreme Court observed that the Court of Appeals had adopted a test originally delineated in Dix v. Johnson (In re Dix), 95 B.R. 134, 138 (B.A.P. 9th Cir. 1988). The Dix test calls for a court to evaluate the late-filer's conduct using the following factors:

(1) whether granting the delay will prejudice the debtor;
(2) the length of the delay and its impact on efficient court administration;
(3) whether the delay was beyond the reasonable control of the person whose duty it was to perform;
(4) whether the creditor acted in good faith; and
(5) whether clients should be penalized for their counsel's mistake or neglect.

Pioneer, 507 U.S. at 385 (citing Dix, 95 B.R. at 138). The Supreme Court did not disagree with the Court of Appeals' application of these factors.[3] The Supreme Court ultimately affirmed the decision of the Court of Appeals. Id. at 398-99.

14. Application of the Pioneer factors in the present matter favors granting the Second-Lien Lenders leave to file a late Sale Objection.

## A. Allowing the Second-Lien Lenders to File the Sale Objection Will Not Prejudice the Debtors.

15. The United States Court of Appeals for the Third Circuit has held that "prejudice" for the purpose of determining whether excusable neglect exists cannot be "imagined or hypothetical." Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 188 F.3d 116, 127 (3d Cir. 1999).

16. Here, no prejudice will result by allowing the Second-Lien Lenders to file a late Sale Objection. The Debtors were aware of the possibility of the Sale Objection in light of the manner by which they have conducted the sale process and failed to provide details regarding an alternative bid. As explained above, and more fully in the Sale Objection, if the alternative bid

---

[3] The Supreme Court did disagree with the Court of Appeals' suggestion that a client is not accountable for the acts or omissions of its counsel. See Pioneer, 507 U.S. at 396.

that has come to the Second-Lien Lenders' attention is permitted to be explored, it would inure to the benefit of the Debtors' major constituencies.

17. Moreover, as with the Cross-Motion, the mere filing of the Sale Objection does not give rise to it being sustained automatically.

**B. The Short Delay in Filing the Second-Lien Lenders' Sale Objection Will Not Adversely Impact the Efficient Administration of the Debtors' Bankruptcy Cases.**

18. The Second-Lien Lenders intend to file the Sale Objection promptly, and the Sale Objection (if permitted to be filed late) will be filed just under one week prior to the hearing on the Sale Motion. Such a short delay in filing the Sale Objection certainly would not adversely impact the efficient administration of the Debtors' bankruptcy cases.

19. Indeed, it was the Debtors that determined to set the objection deadline two weeks prior to the hearing on the Sale Motion. The Third Circuit Court of Appeals noted in O'Brien that urgency created by the Debtors' time line is not an exigency that should be given great weight. See O'Brien, 188 F.3d at 130. The Court of Appeals added that "although it is proper to consider the delay's effect on the judicial proceedings, Pioneer teaches that we should consider the length of the delay in absolute terms . . . ." Id.

20. Under these circumstances, the deadline set by the Debtors should not bar the Second-Lien Lenders from asserting their rights. Allowing the Second-Lien Lenders to file a late Sale Objection will not prejudice the Debtors or their estates, and it is appropriate as a matter of equity.

**C. The Delay in Filing the Sale Objection Was Not Within the Reasonable Control of the Second-Lien Lenders.**

21. The delay in filing the Sale Objection was not within the reasonable control of the Second-Lien Lenders. It was not until on or about Friday, September 17, 2010 – two days after

the objection deadline – that the Second-Lien Lenders became aware of the alternative bid that is discussed in the Sale Objection, and the positive results that it could render in this case should it be permitted to be pursued.

22. Moreover, even if the delay were, somehow, within the reasonable control of the Second-Lien Lenders (which it is not), in any event that fact would not be determinative. As held by the Supreme Court, excusable neglect is not limited to those cases in which the party seeking relief is without fault. See Pioneer, 507 U.S. at 388; see also O'Brien, 188 F.3d at 128. In determining whether any neglect on the movants' part is "excusable," this Court must also consider the debtors' role in contributing to the mishap. See O'Brien, 188 F.3d at 128-29 (stating that examination of debtors' role in mishap is essential to determining whether neglect is excusable).

23. Here, the Debtors have insisted that the details of this alternative bid not be shared with the Second-Lien Lenders or their professionals. The Debtors' management instead has continued to press forward in its headlong rush to sell ASR in a Section 363 sale to the first-lien lenders in a credit bid.

24. Under these circumstances, the Second-Lien Lenders' failure to submit the Sale Objection prior to the deadline selected by the Debtors was a result of the Debtors' own decisions and actions.

**D.   The Second-Lien Lenders Are Acting in Good Faith.**

25. Courts generally find that movants are acting in good faith when they act quickly to remedy a missed deadline. See, e.g., Garden Ridge, 348 B.R. at 646.

26. None of the circumstances surrounding this matter connote bad faith. The Second-Lien Lenders simply seek an opportunity to assert their rights to object to the Sale

Motion based largely upon the discovery of the existence of an alternative bid that would render a superior result to the Debtors' major constituencies. The rules governing extensions and tardy filings were drafted "to preserve rather than forfeit rights." Pioneer, 507 U.S. at 390 (quoting Fed. R. Bankr. P. 10-401(b) (subsequently repealed) advisory committee's note). The Second-Lien Lenders' failure to file the Sale Objection was not a tactical or conscious decision. Rather, the Second-Lien Lenders advised their counsel to seek leave to file a tardy Sale Objection upon their discovery of the alternative bid, and have taken reasonable steps to preserve their rights in a prompt manner. The Second-Lien Lenders are acting in good faith, and nothing suggests to the contrary.

E. **There Was No Mistake or Neglect by the Second-Lien Lenders' Counsel for Which the Second-Lien Lenders Should Be Penalized.**

27. Here, there was no mistake or neglect by the Second-Lien Lenders' counsel for which the Second-Lien Lenders should be penalized. The Second-Lien Lenders' counsel acted promptly to file this Motion to File Late Objection upon being contacted by the Second-Lien Lenders regarding their discovery of the alternative bid.

28. In light of all of these circumstances, the Second-Lien Lenders submit that they have acted with excusable neglect and seek the Court's permission to allow them to file the Sale Objection.

## CONCLUSION

WHEREFORE, for the reasons stated above, the Second-Lien Lenders respectfully request the entry of an order: (a) scheduling the Cross-Motion for hearing on September 28, 2010 at 10:30 a.m. (Eastern), (b) providing that objections to the Cross-Motion may be raised anytime at or prior to the hearing thereon, (c) permitting the Second-Lien Lenders to file the Sale Objection after the response deadline, and (d) granting the Second-Lien Lenders such other and further relief as is just and proper.

Dated: September 22, 2010

**WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**

/s/ *Steven K. Kortanek*
Steven K. Kortanek, Esq. (DE Bar No. 3106)
Matthew P. Ward (DE Bar No. 4471)
222 Delaware Avenue Wilmington, DE 19801
(302) 252-4320
(302) 252-4330 (fax)

- and -

**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Andrew Dash, Esq.
Jared Ellias, Esq.
Seven Times Square
New York, New York 10036
(212) 209-4800

- and -

Steven D. Pohl, Esq.
One Financial Center
Boston, MA 02111
(617) 856-8200

*Counsel to Second-Lien Lenders*