# **EXHIBIT A**



August 20, 2010

Energizer Holdings Inc.
533 Maryville University Drive
St. Louis, MO 63141

Ladies and Gentlemen:

In connection with your analysis of a possible negotiated transaction (the "*Transaction*") involving American Safety Razor Company, LLC (the "*Company*"), you have requested certain confidential or proprietary information, which is not in the public domain. Such information (irrespective of the form of communication (whether oral, written, electronic or any other form) and whether such information is so furnished before, on or after the date hereof) concerning the Company or any of its direct or indirect shareholders, or any of their respective employees, directors, subsidiaries or affiliates, and all analyses, compilations, forecasts, notes, studies or other documents prepared by you or your Representatives (defined below) containing or based in whole or in part on any such furnished information are collectively referred to herein as the "*Confidential Information*." Confidential Information does not include information that (a) is publicly available at the time of disclosure and becomes publicly available other than as a result of a violation of this letter agreement, (b) is or becomes available to you from a source other than the Company or its representatives, <u>provided</u> that, to your best knowledge, such source was not prohibited from disclosing such information to you by a legal, contractual or fiduciary obligation owed to the Company or its representatives, or (c) you can establish is already in your possession (other than information furnished by or on behalf of the Company or its representatives).

In consideration of furnishing you with the Confidential Information, the Company requests your agreement to the following:

1. The Confidential Information will be kept strictly confidential and will be used by you and your Representatives solely for the purpose of evaluating the Transaction and for no other purpose, and will not be disclosed by you to any third person, except that you may disclose the Confidential Information or portions thereof to your affiliates and to you and your affiliates' respective directors, members, managers, officers and employees listed on Schedule A hereto and professional advisors and any prospective debt financing sources who in each case need to receive such Confidential Information for the purpose of evaluating the Transaction (collectively, the "*Representatives*"); <u>provided</u> that you will provide any such Representatives a copy of this agreement, advise such Representatives that the Confidential Information is confidential and proprietary and that by receiving it such Representatives are agreeing to be bound by the

confidentiality provisions hereof. You agree that you shall be responsible for any breach of this agreement (or any other action or omission that would constitute such a breach if done by you directly) by your Representatives (it being understood that such responsibility shall be in addition to and not by way of limitation of any right or remedy the Company may have against your Representatives with respect to any such breach). You agree not to circulate the Confidential Information within your own organization or to any of your Representatives except to the extent permitted hereunder and as is necessary for negotiations, discussions and consultations with respect to the Transaction. For the avoidance of doubt, Schedule A hereto may be amended with the consent of the Company, such consent not to be unreasonably withheld.

2. Without the prior written consent of the Company, neither you nor your Representatives will disclose to any person either the fact that any investigations, discussions or negotiations are taking place concerning a possible Transaction, the fact that you have requested or received Confidential Information from the Company or its representatives or that Confidential Information has been made available by or on behalf of the Company or its representatives, the existence of this agreement or any of the terms, conditions or other facts with respect to any such possible Transaction. The Company agrees that, except as is required in connection with the obligations of the Company under the bidding procedures or sale order applicable to the Company and certain of its subsidiaries as Debtors (defined below) in the bankruptcy case filed on July 28, 2010 for relief under Chapter 11 of Title 11 of the Bankruptcy Code (defined below) in the Bankruptcy Court (defined below), or as otherwise required by law or regulation or legal or judicial process or by any regulatory, governmental or securities body, it will not disclose to any person, other than to its representatives, the fact that you have requested or received Confidential Information or that you are engaged in an evaluation of a potential Transaction or the terms, conditions or other facts with respect to a potential Transaction proposed by you. The term "person" as used in this letter agreement shall be broadly interpreted to include, without limitation, the media and any corporation, company, group, partnership, individual or other entity.

3. Notwithstanding any other provision of this letter agreement, if you or any of your Representatives is required to disclose any Confidential Information pursuant to a valid order of a court or other governmental body or is otherwise required by law or regulation or legal or judicial process or by any regulatory, governmental or securities body to disclose Confidential Information, you or such Representative may disclose only such portion of the Confidential Information as you or such Representative is legally required to disclose (as confirmed by the opinion of legal counsel), provided, to the extent permitted by law, you shall give prompt prior notice of the such requirement to the Company in order to allow the Company to obtain a protective order or other appropriate remedy. In addition, you and your Representatives shall not oppose any action (and will, if and to the extent requested by the Company, cooperate with, assist and join with the Company, at the Company's expense, in any reasonable action) by the Company to obtain an appropriate protective order or other reliable assurance that confidential treatment will be accorded the Confidential Information and other items referred to in this agreement.

4. If you determine not to pursue a Transaction, you will promptly notify the Company of your determination. At the time of such notice, or if, at any earlier time, the Company so directs (whether or not you determine to pursue a Transaction), you and your Representatives will, at your expense, promptly return to the Company or, at your option, destroy, all written Confidential Information that was furnished to you by or on behalf of the Company (provided that

any such destruction shall be certified by an authorized Representative), and, unless otherwise required by law or regulation, you and your Representatives will destroy all analyses, compilations, forecasts, notes, studies or other documents prepared by you or your Representatives which contain or reflect any Confidential Information. Notwithstanding anything in this Agreement to the contrary, you shall not be required to destroy or erase any general electronic archive or back-up tapes that are routinely kept by you in the ordinary course of business pursuant to records retention policies or "litigation holds" on destruction of documents imposed by counsel in connection with pending or threatened litigation.

5. You acknowledge that, in your examination of the Confidential Information, you will have access to material non-public information concerning the Company. You agree that, for a period of two years from the date of this agreement, neither you nor any of your affiliates will, unless invited (on an unsolicited basis) by the Board of Directors of the Company in writing: (i) acquire, offer or propose to acquire, or agree or seek to acquire, directly or indirectly, by purchase or otherwise, any securities or direct or indirect rights or options to acquire any securities of the Company, or of any successor to or person in control of the Company, or any assets of the Company or division thereof or of any such successor or controlling person; (ii) enter into or agree, offer, propose or seek to enter into, or otherwise be involved in or part of, directly or indirectly, any acquisition transaction or other business combination relating to all or part of the Company or any acquisition transaction for all or part of the assets of the Company or any of its business; (iii) seek or propose, alone or in concert with others, to influence or control the management or policies of the Company; (iv) acquire, offer or propose to acquire, solicit an offer to sell or agree to acquire, directly or indirectly, alone or in concert with others, by purchase or otherwise, any direct or indirect beneficial interest in Claims (as defined below) against the Debtors (as defined below); (v) alone or in concert with others, seek to terminate the Debtors' exclusive right to propose a plan of reorganization in the Debtors' Chapter 11 cases or seek to propose to any holder of any Claim against the Debtors any merger, business combination, restructuring, recapitalization or other transaction with the Debtors; (vi) directly or indirectly enter into any discussions, negotiations, arrangements or understandings with any other person with respect to any of the foregoing activities or propose any of such activities to any other person; (vii) advise, assist, encourage, act as a financing source for or otherwise invest in any other person in connection any of the foregoing activities; or (viii) disclose any intention, plan or arrangement inconsistent with any of the foregoing. You will promptly advise the Company of any inquiry or proposal made to you with respect to any of the foregoing.

As used in this agreement: (a) "Debtors" means the Company and certain of its subsidiaries that filed voluntary petitions on July 28, 2010 for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the District of Delaware (the "*Bankruptcy Court*"); and (b) "Claims" shall have the meaning set forth in the Bankruptcy Code.

6. You understand and acknowledge that the Company and its representatives shall have the right, in its sole discretion, to determine what information to make available to you and that neither the Company nor any of its representatives is under any obligation to make any particular information available to you or to supplement or update any Confidential Information previously furnished. You understand and acknowledge that neither the Company nor any of its representatives is making any representation or warranty, express or implied, as to the accuracy or

completeness of the Confidential Information, and neither the Company nor any of its representatives will have any liability to you or any other person resulting from your use of the Confidential Information. Only those representations or warranties that are made to you in a definitive agreement executed the Company regarding a Transaction (a "*Definitive Agreement*") when, as, and if it is executed, and subject to such limitations and restrictions as may be specified in such Definitive Agreement, will have any legal effect. The term "Definitive Agreement" does not include an executed letter of intent or any other preliminary written agreement, nor does it include any written or oral acceptance of any offer or bid on your part.

      7.    You understand and agree that no contract or agreement providing for a Transaction shall be deemed to exist unless and until a Definitive Agreement has been executed and delivered by the Company and you. You also agree that unless and until a Definitive Agreement between the Company and you with respect to a Transaction has been executed and delivered, neither the Company nor any of its stockholders, affiliates or Representatives nor you has any legal obligation of any kind whatsoever with respect to such Transaction by virtue of this agreement or any other written or oral expression with respect to such Transaction except, in the case of this agreement, for the matters specifically agreed to herein. You further acknowledge and agree that the Company reserves the right, in its sole discretion, to reject any and all proposals made by you or your Representatives with regard to a Transaction, and to terminate discussions and negotiations with you at any time. You understand that (i) the Company and its Representatives shall be free to conduct any process for any Transaction as they in their sole discretion shall determine (including negotiating with any of the prospective parties to such Transaction, terminating discussions and negotiations with you with respect to a Transaction and entering into a Definitive Agreement, without prior notice to you or any other person) and (ii) any procedures relating to such Transaction may be changed at any time without notice to you or any other person. You hereby confirm that you are not acting as a broker for or representative of any person and are considering the Transaction only for your own account. You further confirm that neither you nor any of your affiliates or Representatives have entered into, directly or indirectly, any agreements, arrangements or understandings with any person (other than any agreements, arrangements or understandings between you and your Representatives to whom you are permitted to disclose Confidential Information in accordance with this agreement) with respect to a possible Transaction, and you hereby agree that, without the prior written consent of the Company, neither you nor any of your affiliates or Representatives will enter into, directly or indirectly, any discussions, negotiations, agreements, arrangements or understandings with any person (other than discussions, negotiations, agreements, arrangements or understandings between you and your Representatives to whom you are permitted to disclose Confidential Information in accordance with this agreement) with respect to a Transaction.  Neither this paragraph nor any other provision in this agreement can be waived, amended or assigned except by written consent of the Company, which consent shall specifically refer to this paragraph (or such other provision) and explicitly make such waiver or amendment.

      8.    You agree that money damages may not be a sufficient remedy for any breach of this agreement by you or any of your Representatives and that the Company shall be entitled to seek equitable relief, including injunction and specific performance, in the event of any such breach, in addition to all other remedies available to the Company at law or in equity, and, to the extent the Company would be entitled on the merits to obtain such relief, you waive any objection to the imposition of such relief. You further agree to waive, and to use your reasonable efforts to cause

your officers, employees and agents to waive, any requirement for the securing or posting of any bond in connection with such remedy. You agree to indemnify the Company for, and to hold the Company harmless against, any and all liabilities, costs, expenses, losses, damages and claims arising out of your or any of your Representatives' breach of this agreement.

      9. This letter agreement shall be governed by, and construed in accordance with, the laws of the State of New York without giving effect to the otherwise applicable principles of law as to conflicts or choice of law of such state. Each party hereto hereby (a) irrevocably and unconditionally consents to the jurisdiction of the United States Bankruptcy Court for the District of Delaware for any issues, actions, suits or proceedings arising out of or relating to this letter agreement, (b) agrees that service of any process, summons, notice or document by facsimile (confirmed by mail), overnight courier service, United States registered or certified mail, postage prepaid, addressed to the address set forth herein or to such other addresses as may be thereafter designated in writing or by hand delivery to the party at its address set forth herein shall be effective service of process for any action, suit or proceeding brought against the party in any court with respect to this letter agreement and (c) irrevocably and unconditionally waives any objection that it now or hereafter may have to the laying of venue of any action, suit or proceeding arising out of this letter agreement or the transactions contemplated hereby in the jurisdictions described above.

      10. You agree that no failure or delay by the Company in exercising any right, power or privilege hereunder will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.

      11. If any provision of this agreement is found to violate any statute, regulation, rule, order or decree of any governmental authority, court, agency or exchange, such invalidity shall not be deemed to affect any other provision hereof or the validity of the remainder of this agreement, and such invalid provision shall be deemed deleted herefrom to the minimum extent necessary to cure such violation.

      12. You agree that, for a period of two years from the date of this letter agreement, without the prior written consent of the Company, you will not, nor will you permit your affiliates to, directly or indirectly: (a) solicit to hire or hire (or cause or seek to cause to leave the employ of the Company) (i) any executive employed by the Company; or (ii) any other employee of the Company or any subsidiary of the Company with whom you have had contact or who (or whose performance) became known to you in connection with the process contemplated by this agreement; provided, however, that the foregoing provision will not prevent you from hiring any such person who (x) contacts you in response to a solicitation directed at the public in general through advertisement or similar means not targeted specifically at such employee or a general solicitation from a recruitment firm not targeted specifically at such employee or the Company or (y) has not been employed by the Company during the six months preceding such hiring or (b) hold any discussions outside the ordinary course of business consistent with past practice regarding the Company or any of its subsidiaries with any suppliers, customers and/or any other person with whom the Company or any of its subsidiaries have a relationship.

13. This agreement and all rights and obligations hereunder shall expire and cease to have any force or effect on the earlier of (a) the date of consummation of the proposed Transaction or (b) the second anniversary of the date hereof.

14. This agreement may be executed in counterparts, each of which shall be deemed to be an original, and all of such counterparts taken together shall be deemed to constitute one and the same instrument. The parties agree that facsimile signatures shall be accepted as originals for all purposes under this letter agreement.

15. THE PARTIES WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION, CLAIM, SUIT, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATING TO OR ARISING OUT OF THE ENGAGEMENT OF THE UNDERSIGNED PURSUANT TO, OR THE PERFORMANCE BY THE UNDERSIGNED OF THE SERVICES CONTEMPLATED BY, THIS LETTER AGREEMENT.

16. Each party hereto has all requisite corporate power and authority to enter into this letter agreement. This letter agreement has been duly authorized by all necessary corporate action on the part of each party and has been duly executed and delivered by each party and constitutes a legal, valid and binding agreement of the parties, enforceable in accordance with its terms.

[*Remainder of This Page Left Blank Intentionally*]

If you agree with the foregoing, please sign and return a copy of this letter, which will constitute our agreement with respect to the subject matter of this letter.

Very truly yours,

AMERICAN SAFETY RAZOR COMPANY, LLC

By: *J. Andrew Bolt*
Name: J. Andrew Bolt
Title: Executive Vice President

ACCEPTED AND AGREED BY THE UNDERSIGNED:

Energizer Holdings, Inc.

By: *[signature]*
Name: William C. Fox
Title: VP & Treasurer

*Schedule A*

| Name | Title | Email Address |
|---|---|---|
| Drabik, John J. | Assistant Treasurer | johnj.drabik@energizer.com |
| Fox, William C. | Vice President, Treasurer | williamc.fox@energizer.com |
| Hatfield, David P. | President & CEO – Energizer Personal Care | davidp.hatfield@energizer.com |
| Klein, Ward M. | Chief Executive Officer | wardm.klein@energizer.com |
| LaVigne, Mark S. | Vice President, Secretary | mark.lavigne@energizer.com |
| Lipton, Joshua | Partner, Gibson Dunn | jlipton@gibsondunn.com |
| Robertson, Al | General Manager and Chief Marketing Officer – Energizer Personal Care | al.robertson@energizer.com |
| Sescleifer, Daniel J. | Executive Vice President and Chief Financial Officer | danielj.sescleifer@energizer.com |
| Sheldon, Sandra J. | Vice President, Finance, Energizer Personal Care | sandyj.sheldon@energizer.com |
| Stratmann, Gayle G. | Vice President and General Counsel | gayleg.stratmann@energizer.com |
| Ver Nooy, David | Vice President, Global Operations and RDE – Energizer Personal Care | david.vernooy@energizer.com |