# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------x
                       :

In re                  :      **Chapter 11**
                       :

**AMERICAN SAFETY**     :      **Case No. 10-12351 (MFW)**
**RAZOR COMPANY, LLC,** *et al.*[1]  :
                       :

      **Debtors.**       :      **Jointly Administered**
                       :
----------------------------------------x

## ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, AND ENCUMBRANCES AND OTHER INTERESTS; (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH; AND (C) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion") [Docket No. 28] of American Safety

Razor Company, LLC ("ASR") and its affiliated debtors and debtors-in-possession (collectively,

the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Bankruptcy Cases")

for entry of an order (the "Sale Order"), among other things: (i) approving the sale (the "Sale")

of the Purchased Assets[2] free and clear of all Claims and Encumbrances (other than Permitted

Encumbrances and Assumed Liabilities), (ii) authorizing the assumption and assignment of the

---

[1]    The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: American Safety Razor Company, LLC (0207), American Safety Razor Corporation (5475), ASR Holdings, Inc. (6509), Industrias Manufactureras ASR de Puerto Rico, Inc. (4894), Megas Beauty Care, Inc. (0321), Megas de Puerto Rico, Inc. (3065), Personna International de Puerto Rico, Inc. (0814), RSA Holdings Corp. of Delaware (3029), RSA Soap Company, Inc. (7635), and Valley Park Realty, Inc. (3691). The following entities are non-debtor foreign affiliates of the Debtors: American Safety Razor Australia Pty Limited; American Safety Razor do Brasil Ltda.; American Safety Razor of Canada Limited; ASR Exportacao, Importacao, Comercio e Industria de Produtos de Barbear Ltda; Personna International CZ s.r.o.; Personna International de Mexico, S.A. de C.V.; Personna International Israel Ltd.; Personna International Limited; Personna International UK Limited; Personna International UK Ltd; and Wolco Holland BV. The corporate address of American Safety Razor Company, LLC is 240 Cedar Knolls Road, Cedar Knolls, NJ 07927.

[2]    Unless otherwise stated, all capitalized terms used but not otherwise defined herein shall have the same meaning as set forth in the Purchase Agreement (as defined below) or Motion, as applicable.

Assigned Contracts in connection therewith, and (iii) granting other related relief; and, after the conclusion of the Auction, the Court having determined that the asset purchase agreement substantially in the form attached hereto as Exhibit A (as may be amended, the "Purchase Agreement") between ASR (the "Seller") and Acquisition Company LLC (the "Purchaser") is the Successful Bid and the Purchaser is the Successful Bidder; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and adequate notice of the Motion and opportunity for objection having been given; and adequate notice with respect to the assumption and assignment of the Assigned Contracts having been given pursuant to the *Debtors' Motion Pursuant to Sections 105(a) and 365 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6006 for Entry of an Order Establishing Certain Notice Procedures Related to the Assumption and Assignment of Executory Contracts and Leases* [Docket No. 27] (the "Assumption Notice Motion"); and this Court having reviewed and considered the Motion and the objections thereto; and this Court having heard statements of counsel and the evidence presented at a hearing before this Court on September 28, 29 and 30, 2010 and October 8, 2010 (the "Sale Hearing"); and upon entry of the *Order Establishing Revised Bid And Auction Procedures and Adjourning the Sale Hearing*, dated October 6, 2010 [Docket No. 320], which, among other things, modified the Bidding Procedures (as modified at the Sale Hearing and therein, hereinafter, the "Revised Bidding Procedures"); and upon consideration of all the pleadings filed with this Court; and upon the record made by the Debtors and other parties, and the evidence, testimony, exhibits, and arguments of counsel presented at the Sale Hearing; and it appearing that no other notice need be given; and upon the full record of these cases; and after due deliberation and sufficient cause therefor:

2

**THE COURT HEREBY FINDS THAT:[3]**

### Jurisdiction, Final Order and Statutory Predicates

A.    This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a).    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

C.    The statutory predicates for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014.

### Notice of the Sale, the Revised Bidding Procedures and the Cure Costs

D.    Actual written notice of the Sale Hearing, the Motion, the Sale, the Revised Bidding Procedures, and the assumption and assignment of the Assigned Contracts, and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all known interested Persons and entities entitled to receive such notice, including, but not limited to the following parties:

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

(i)     the Office of the United States Trustee for the District of Delaware;

(ii)    the Debtors' thirty (30) largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions;

(iii)   counsel to the official committee of unsecured creditors appointed in these Bankruptcy Cases (the "Committee");

(iv)    counsel to the administrative agent for the Debtors' prepetition first lien secured lenders and postpetition secured lenders;

(v)     counsel to the administrative agent for the Debtors' prepetition second lien secured lenders;

(vi)    counsel to the Debtors' equity sponsors;

(vii)   all taxing authorities and other governmental agencies having jurisdiction over any of the Purchased Assets, including the Internal Revenue Service;

(viii)  all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002;

(ix)    all Persons known or reasonably believed to have asserted an Encumbrance on any of the Purchased Assets;

(x)     the counterparties to each of the Assigned Contracts (the "Contract Counterparties") pursuant to the Assumption Notice Motion;

(xi)    all Persons known or reasonably believed to have expressed an interest in acquiring all or substantially all of the Purchased Assets within the last six months;

(xii)   the Attorneys General in the State where the Purchased Assets are located;

(xiii)  Pension Benefit Guaranty Corporation;

(xiv)   the United States Environmental Protection Agency; and

(xv)    any applicable state environmental agency.

    E.    The Debtors published notice of (i) the Sale, (ii) the deadlines by which potential bidders must submit bid materials, (iii) that the Auction would be held if Qualified Bids were received, and (iv) where parties could obtain further information about the sale process in the national editions of USA Today and The Wall Street Journal on September 8, 2010.

F.     Pursuant to the Assumption Notice Motion, the Debtors have served notice upon the Contract Counterparties: (i) that the Seller seeks to assume and assign certain executory contracts and unexpired leases as provided for in the Purchase Agreement as of the Closing Date; and (ii) of the relevant proposed Cure Costs for each of the Assigned Contracts. The service of such notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of establishing a Cure Cost for the Assigned Contracts. Each of the Contract Counterparties has had an opportunity to object to the Cure Costs set forth in the notice.

G.     The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the sales process, including, without limitation: (i) determination of final Cure Costs; and (ii) approval and authorization to serve notice of the Auction and Sale Hearing.

H.     The notice of the Revised Bidding Procedures, the Auction and the Sale Hearing provided all interested parties with timely and proper notice of the Sale, the Revised Bidding Procedures, the Sale Hearing and the Auction.

I.     As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Motion, the Auction, the Revised Bidding Procedures, the Sale Hearing, and the Sale has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014. The notices described above were good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Revised Bidding Procedures, the Auction, the Sale, the Sale Hearing, or the assumption and assignment of the Assigned Contracts is required. No other or further notice of the Sale Motion, the Revised Bidding Procedures, the Sale Hearing, or of the entry of this Order is necessary or shall be required.

J.      The disclosures made by the Debtors concerning the Purchase Agreement, the Revised Bidding Procedures, the Sale, the Sale Hearing, and the assumption and assignment of the Assigned Contracts were good, complete and adequate.

### Good Faith of the Purchaser

K.      The Purchaser is not an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

L.      The Purchaser is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (i) the Purchaser recognized that the Seller was free to deal with any other party interested in acquiring the Purchased Assets; (ii) the Purchaser agreed to subject its bid to competitive bidding at the Auction; (iv) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (v) the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (vi) no common identity of directors or controlling stockholders exists between the Purchaser and the Seller or any of the other Debtors; and (vii) the negotiation and execution of the Purchase Agreement was at arms' length and in good faith.

### Highest and Best Offer

M.      The Debtors conducted a marketing process in accordance with, and have otherwise complied in all material respects with, the Revised Bidding Procedures. The process set forth in the Revised Bidding Procedures, including the Auction, was conducted in a noncollusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Purchased Assets. The Debtors

6

and their professionals (i) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets, (ii) afforded interested parties a full, fair and reasonable opportunity to conduct due diligence and submit offers prior to the Bid Deadline.

N.      The Purchase Agreement constitutes the highest and best offer for the Purchased Assets.

O.      The Purchase Agreement represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of the Bankruptcy Cases.

P.      Approval of the Motion and the Purchase Agreement and the consummation of the transactions contemplated thereby are in the best interests of the Debtors, their creditors, their estates and other parties in interest.

Q.      The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization.

### No Fraudulent Transfer

R.      The consideration provided by the Purchaser pursuant to the Purchase Agreement is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

S.      The Purchaser is not a mere continuation of the Seller, the other Debtors or their respective estates and there is no continuity between the Purchaser and the Seller, the other Debtors or their respective estates. The Purchaser is not holding itself out to the public as a continuation of the Seller or the other Debtors. The Purchaser is not a successor to the Seller or

the other Debtors or their respective estates and the Sale does not amount to a consolidation, merger or de facto merger of the Purchaser and the Seller or the other Debtors.

## Validity of Transfer

T.      Upon entry of this Sale Order, the Seller has full corporate power and authority to execute and deliver the Purchase Agreement and all other documents contemplated thereby, and no further consents or approvals are required for the Seller to consummate the transactions contemplated by the Purchase Agreement, except as otherwise set forth in the Purchase Agreement.

U.      The transfer of each of the Purchased Assets to the Purchaser will be as of the Closing Date a legal, valid, and effective transfer of such Purchased Assets, and vests or will vest the Purchaser with all right, title, and interest of the Seller to the Purchased Assets free and clear of all Claims and Encumbrances accruing, arising or relating thereto any time prior to the Closing Date, except for any Permitted Encumbrances and Assumed Liabilities.

## Section 363(f) Is Satisfied

V.      The Purchaser would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby if the sale of the Purchased Assets to the Purchaser, and the assumption and assignment and sale of the Assigned Contracts to the Purchaser, were not free and clear of all Encumbrances of any kind or nature whatsoever (except the Permitted Encumbrances and Assumed Liabilities), or if the Purchaser would, or in the future could, be liable for any of such Encumbrances.

W.      The Seller may sell the Purchased Assets free and clear of all Encumbrances against the Seller and the other Debtors, their respective estates or any of the Purchased Assets (except for the Permitted Encumbrances and Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been

8

satisfied. Those holders of Encumbrances against the Seller, the other Debtors, their respective estates or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Encumbrances who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Encumbrances, if any, in each instance against the Seller, the other Debtors, their respective estates or any of the Purchased Assets (other than the Wind Down Amount), attach to the proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Seller or the other Debtors and their estates may possess with respect thereto.

## Assumption and Assignment of the Assigned Contracts

X.     The assumption and assignment of the Assigned Contracts pursuant to the terms of this Sale Order is integral to the Purchase Agreement and is in the best interests of the Debtors and their estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

Y.     The respective Cure Costs amounts, as set forth on Schedule 1 annexed hereto, are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the Assigned Contracts.

Z.     Pursuant to the terms of the Purchase Agreement and in accordance with section 365 of the Bankruptcy Code, upon payment of the Cure Costs, the Purchaser shall have: (i) cured and/or provided adequate assurance of cure of any monetary default existing prior to the Closing Date under any of the Assigned Contracts, within the meaning of section 365(b)(1)(A)

9

of the Bankruptcy Code; (ii) provided compensation or adequate assurance of compensation to any party for actual pecuniary loss to such party resulting from a default prior to the Closing Date under any of the Assigned Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code; and (iii) provided adequate assurance of its future performance under the relevant Assigned Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

## Compelling Circumstances for an Immediate Sale

AA.    To maximize the value of the Purchased Assets and preserve the viability of the business to which the Purchased Assets relate, and to reduce the amount of postpetition debtor-in-possession financing borne by the Debtors, it is essential that the Sale of the Purchased Assets occur within the time constraints set forth in the Purchase Agreement. Time is of the essence in consummating the Sale.

BB.    The consummation of the transactions contemplated by the Purchase Agreement is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m) 365(b), and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

CC.    The Sale does not constitute a de facto plan of reorganization or liquidation or an element of such a plan for any of the Debtors, as it does not and does not propose to: (i) impair or restructure existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtors; (iii) circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify Claims or Equity Encumbrances, compromise controversies or extend debt maturities.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

## General Provisions

1.    _Relief Granted._ The relief requested in the Motion as modified by the Court is granted and approved, and the Sale to Purchaser under the Purchase Agreement is approved as set forth in this Sale Order.

2.    _Objections Overruled._ Any and all objections to the Motion, including the objection and supplemental objection filed by GSO/Blackstone Debt Funds Management LLC and Blackrock Kelso Capital Corporation [Docket Nos. 249 and 263] (the "GSO/Blackstone Objection and Cross-Motion"), as joined by Venor Capital Master Fund Ltd., or the relief requested therein that has not been withdrawn, waived, or settled or otherwise resolved as announced to this Court at the Sale Hearing or by stipulation filed with this Court or as otherwise provided in this Order, and all reservations of rights included therein, are hereby overruled on the merits; provided, however, that nothing herein resolves the "Cross-Motion" portion of the GSO/Blackstone Objection and Cross-Motion, which "Cross-Motion" remains extant.

## Approval of the Purchase Agreement

3.    _Agreement Approved._ The Purchase Agreement and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

4.    _Authorization to Consummate Transactions._ Pursuant to section 363(b) of the Bankruptcy Code, the Seller and the other Debtors are authorized and directed to (a) consummate the Sale of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the Purchase Agreement, and (b) execute and deliver, perform under, and implement the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement

11

and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement and such other ancillary documents.

5.     <u>Order Binding on All Parties</u>.   This Sale Order shall be binding in all respects upon the Seller and the other Debtors, their respective estates, the First Lien Agent, the First Lien Lenders, the Second Lien Agent, any lender pursuant to the Second Lien Credit Agreement, all creditors, all holders of equity interests in any Debtor, all holders of any Claim(s) (whether known or unknown) against any Debtor, any holders of Encumbrances against or on all or any portion of the Purchased Assets, all Contract Counterparties, the Purchaser and all successors and assigns of the Purchaser, and any trustees, examiners, responsible officers, estate representatives, or similar entities for any of the Debtors, if any, subsequently appointed in the Bankruptcy Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Bankruptcy Cases.  This Sale Order and the Purchase Agreement shall inure to the benefit of the Debtors, their estates and creditors, the Purchaser and their respective successors and assigns.

### Transfer of the Purchased Assets

6.     <u>Transfer of Purchased Assets Authorized</u>.   Pursuant to Bankruptcy Code sections 105(a), 363(b), and 363(f) the Debtors are authorized to transfer the Purchased Assets on the Closing Date, and the Purchaser is directed to pay the Purchase Price to the Debtors as provided in the Purchase Agreement.

7.     <u>Transfer "As Is", Etc</u>.   Except as otherwise provided in the Purchase Agreement, the Purchased Assets shall be transferred to the Purchaser "as is, where is" with all faults in accordance with the Purchase Agreement upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets and, upon the Seller's receipt of the Purchase Price, shall be free and clear of all Encumbrances, except any

12

Permitted Encumbrances and Assumed Liabilities. Upon the closing of the Sale contemplated within the Purchase Agreement (the "Transactions"), the Purchaser shall take title to and possession of the Purchased Assets, subject to Permitted Encumbrances and Assumed Liabilities.

8. Surrender of Purchased Assets by Third Parties. All entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser at the closing of the Sale. All entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Sellers to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the Purchase Agreement and this Sale Order.

9. Transfer Free and Clear of Encumbrances. Pursuant to section 363(f) of the Bankruptcy Code, the transfer of title to the Purchased Assets shall be free and clear of any and all Encumbrances, except for any Permitted Encumbrances and Assumed Liabilities. The Purchaser is not and shall not be liable as a successor under any theory of successor liability for Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) that encumber or relate to the Purchased Assets.

10. Creditors Directed to Release Encumbrances. On the Closing Date, each creditor shall be authorized and directed to execute such documents and take all other actions as may be necessary to release Encumbrances (except for Permitted Encumbrances and Assumed Liabilities) on the Purchased Assets, if any, as provided for herein, as such Encumbrances may have been recorded or may otherwise exist.

11. Debtors' and Purchaser's Authorization to Record Releases. If any Person or entity which has filed statements or other documents or agreements evidencing Encumbrances (other than the Permitted Encumbrances and Assumed Liabilities) on or in all or any portion of the Purchased Assets shall not have delivered to the Seller prior to the Closing, in proper form

13

for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to the Purchaser for the purpose of documenting the release of all Encumbrances, which the Person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Seller is hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such Person or entity with respect to the Purchased Assets. The Transactions authorized herein shall be of full force and effect, regardless of any Seller's lack of good standing in any jurisdiction in which it is formed or authorized to transact business. A certified copy of this Sale Order may be filed with the appropriate clerk(s) and/or recorded with the recorder(s) which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances in the Purchased Assets as of the Closing Date of any kind or nature whatsoever, other than the Permitted Encumbrances or Assumed Liabilities.

12. Permanent Injunction. Except as expressly permitted or otherwise specifically provided by the Purchase Agreement or this Sale Order, all Persons and entities holding Encumbrances in or against all or any portion of the Purchased Assets (other than Permitted Encumbrances and the Assumed Liabilities) arising under or out of, in connection with, or in any way relating to the Seller or any of the other Debtors, the Purchased Assets, the operation of the Debtors' business prior to the Closing Date or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser or its successors or assigns, their property or the Purchased Assets, such Persons' or entities' Encumbrances in and to the Purchased Assets.

13. Recording Offices. This Sale Order is and shall be binding upon and govern the acts of all Persons and entities, including, without limitation, all filing agents, filing officers, title

14

agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other Persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing Persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

## Assigned Contracts

14.    Authorization to Assume and Assign.  Upon the Closing of the Sale, the Seller is authorized and empowered to assume and assign each of the Assigned Contracts to the Purchaser free and clear of all Encumbrances (other than Cure Costs, the Permitted Encumbrances and Assumed Liabilities) as of the Closing Date.  The payment of the applicable Cure Costs (if any) by the Purchaser shall (a) effect a cure or adequate assurance of cure of all defaults existing thereunder as of the Petition Date and (b) compensate for any actual pecuniary loss to such Contract Counterparty resulting from such default.  The Purchaser shall then have assumed the Assigned Contracts and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Seller of such Assigned Contracts shall not be a default thereunder.  After the payment of the relevant Cure Costs, none of the Seller, the other Debtors, or the Purchaser shall have any further liabilities to the Contract Counterparties other than the Purchaser's obligations under the Assigned Contracts under the Purchase Agreement or that accrue and become due and payable on or after the Closing Date.

15.    Assignment Requirements Satisfied.  Any provisions in any Assigned Contracts that restrict, prohibit or condition the assignment of such Assigned Contracts or allow the party

15

to such Assigned Contracts to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Seller and assignment to the Purchaser of the Assigned Contracts have been satisfied. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assigned Contracts.

16.     Section 365(k). Upon the Closing, the Purchaser shall be deemed to be substituted for the Seller as a party to the applicable Assigned Contracts and the Seller and the other Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts.

17.     No Default. Upon the payment of the applicable Cure Costs, if any, the Assigned Contracts will remain in full force and effect, and no default shall exist under the Assigned Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

18.     Adequate Assurance Provided. The Purchaser has provided adequate assurance of future performance under the relevant Assigned Contracts within the meaning of Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B).

19.     No Fees. There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser or the Seller as a result of the assumption and assignment of the Assigned Contracts. The failure of the Seller or the Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or

16

conditions, or of the Debtors' and Purchaser's rights to enforce every term and condition of the Assigned Contracts.

20.    Injunction.    Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, other than the right to payment of the Cure Costs, if any, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against the Seller or the Purchaser any assignment fee, default, breach or claim or pecuniary loss arising under or related to the Assigned Contracts existing as of the Petition Date or any assignment fee or condition to assignment arising by reason of the Closing.

## Other Provisions

21.    DIP Payoff.    After depositing the Wind Down Amount, as provided in the Purchase Agreement, in connection with the Closing: (i) the Seller shall pay in cash in full all Obligations (as defined in the DIP Credit Agreement) to the administrative agent under the DIP Credit Agreement (the "DIP Agent"), for the benefit of itself and the lenders party to the DIP Credit Agreement (the "DIP Lenders"), in accordance with the DIP Credit Agreement; and (ii) other than obligations that specifically survive termination as provided in the DIP Credit Agreement, such as any indemnification obligations, the DIP Credit Agreement, the DIP Lenders' commitments thereunder, and any of the DIP Agent's or DIP Lenders' obligations or liabilities under the DIP Order shall be deemed terminated after such DIP payoff.

22.    First Lien Payoff.    On the Closing Date and immediately following the Closing, unless the Court orders otherwise, the Seller shall pay in cash the amount necessary to repay the First Lien Indebtedness in full to the First Lien Agent, for the benefit of itself and the First Lien Lenders, in accordance with the First Lien Credit Agreement.

23.    Second Lien Payoff.    On the Closing Date and immediately following the Closing, unless the Court orders otherwise, any amount of the Cash Consideration (which, for

17

the sake of clarity, does not include the Wind Down Amount) in excess of the amount required to repay the First Lien Indebtedness in cash in full, shall be paid to the Second Lien Agent on account of the Second Lien Indebtedness.

24. <u>Segregation of Wind Down Amount</u>. Notwithstanding anything to the contrary in the DIP Credit Agreement, on the Closing Date, but prior to the DIP Payoff described in paragraph 21 herein, the Debtors shall be authorized to use cash collateral or borrowings under the DIP Credit Agreement to fund the amounts specified in the last sentence of Section 3.12 of the DIP Credit Agreement, including the Wind Down Amount, and the Debtors are authorized and directed to deposit such funds in the account specified in Section 7.18 of the Purchase Agreement. Upon payment of all Wind Down Expenses, the Debtors shall remit the remaining outstanding balance of the Wind Down Amount, if any (the "<u>Wind Down Surplus</u>"), to the Purchaser; <u>provided</u>, <u>however</u>, that the Wind Down Expenses shall be paid, and the Wind Down Surplus shall be remitted to the Purchaser, not later than ninety (90) days after the consummation of a plan of reorganization. Notwithstanding anything to the contrary in the Final DIP Order or in the DIP Facility Documents (as defined in the Final DIP Order), no DIP Facility Lien, Prepetition Lien, Replacement Lien, Permitted Senior Lien, DIP Facility Superpriority Claim, First Lien Administrative Claim or Adequate Protection Payment (each as defined in the Final DIP Order) shall attach to or have any right to payment from the Wind Down Amount.

25. <u>Injunction</u>. Effective upon the Closing Date and except as otherwise provided by stipulations filed with or announced to this Court with respect to a specific matter, except as explicitly provided in the Purchase Agreement, all Persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the Purchased Assets, with respect to any

18

(a) Encumbrance (other than an Assumed Liability or a Permitted Encumbrance) arising under, out of, in connection with or in any way relating to the Debtors, the Purchaser, the Purchased Assets, or the operation of the Purchased Assets prior to the Closing of the Sale, or (b) successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors or assigns, Purchased Assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors, Purchased Assets or properties; (iii) creating, perfecting or enforcing any Encumbrance against the Purchaser, its successors or assigns, Purchased Assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser or its successors or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to issue or renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

26. <u>No Liability for Claims Against Seller or Other Debtors</u>. Except for the Permitted Encumbrances and Assumed Liabilities or as otherwise expressly set forth in this Sale Order or the Purchase Agreement, the Purchaser and its employees, officers, directors, advisors, lenders, affiliates, owners, successors and assigns shall not have any liability (successor, vicarious or otherwise), or any other obligation of the Seller or any of the other Debtors. The Purchaser has given substantial consideration under the Purchase Agreement for the benefit of the holders of any Encumbrance. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of

19

Encumbrances against or interests in the Seller or any of the other Debtors or any of the Purchased Assets.

27. <u>Good Faith</u>. The transactions contemplated by the Purchase Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assigned Contracts), unless such authorization and consummation of such Sale are duly stayed pending such appeal. The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and granted, the full protections of section 363(m) of the Bankruptcy Code.

28. <u>Allocation of Purchased Assets</u>. Purchaser is hereby authorized in connection with consummation of the Purchase Agreement to allocate the Purchased Assets and Assigned Contracts (subject to the terms thereof) among its affiliates, designees, assignees, and/or successors in a manner as it in its discretion deems appropriate and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Purchased Assets or the rights under any Assigned Contract (subject to the terms thereof) to its affiliates, designees, assignees, and/or successors with all of the rights and protections accorded under this Order and the Purchase Agreement, and the Seller shall cooperate with and take all actions reasonably requested by Purchaser to effectuate any of the foregoing.

29. <u>Plan Not to Conflict</u>. Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Bankruptcy Cases, (b) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (c) any

related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Sale Order.

30. Effective Immediately. Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Sale Order shall be effective immediately upon entry and the Seller and the Purchaser are authorized to close the Sale immediately upon entry of this Sale Order.

31. Bulk Sales Law. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

32. Brokers. Except for the fees and expenses of brokers, finders, or financial advisors for the Seller set forth on Schedule 4.10 of the Purchase Agreement (for which the Seller is solely responsible), the Seller does not have any obligation to pay any fees, commissions or other similar compensation to any broker, finder, or financial advisor in connection with the Transactions.

33. Purchase Agreement Approved in Entirety. The failure specifically to include any particular provision of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Purchase Agreement be authorized and approved in its entirety.

34. Standing. The transactions authorized herein shall be of full force and effect, regardless of any Seller's lack of good standing in any jurisdiction in which such Seller is formed or authorized to transact business.

35. Timing. All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

36. Authorization to Effect Order. The Seller is authorized to take all actions necessary to effect the relief granted pursuant to this Order in accordance with the Motion.

21

37.     Automatic Stay. The automatic stay pursuant to Section 362 is hereby lifted with respect to the Seller to the extent necessary, without further order of this Court, to (i) allow the Purchaser to deliver any notice provided for in the Purchase Agreement, and (ii) allow the Purchaser to take any and all actions permitted under the Purchase Agreement in accordance with the terms and conditions thereof.

38.     Escrow Agent. Notwithstanding anything to the contrary in the Purchase Agreement, the Court shall serve as the Escrow Agent (as such term is defined in the Purchase Agreement).

39.     The Backup Bid. The Court approves the asset purchase agreement (the "Back-Up Bid") between Seller and RZR Acquisition Company LLC, along with its parent entity, RZR Holding Corporation, and UBS AG, Stamford Branch, in its capacity as First Lien Agent on behalf of First Lien Lenders, for certain limited provisions thereof, dated October ___, 2010 (collectively, the "Back-Up Bidder") and all related ancillary documents as the Back-Up Bid (as defined in the Revised Bidding Procedures). If the Seller or the Purchaser terminates the Purchase Agreement in accordance with the terms thereof, which each of the Seller and the Purchaser is hereby authorized to do:

(a) all findings of fact, conclusions of law and all decretal paragraphs of this Sale Order pertaining to the Purchaser and the Purchase Agreement shall apply to the Back-Up Bidder and Back-Up Bid, *mutatis mutandis*, specifically, without limitation, the relief provided in paragraph 26 and all other provisions herein conferring of good faith purchaser status pursuant to section 363(m) of the Bankruptcy Code;

(b) pursuant to section 363(b) of the Bankruptcy Code, the Seller and the other Debtors are authorized and directed to (a) consummate the Sale of the Purchased Assets to the Back-Up Bidder pursuant to and in accordance with the terms and conditions of the Back-Up Bid, and (b) execute and deliver, perform under, and implement the Back-Up Bid, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Back-Up Bid and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the

22

performance of the obligations as contemplated by the Back-Up Bid and such other ancillary documents;

(c) any Encumbrances of the First Lien Agent and the First Lien Lenders shall attached to the Parent Consideration (as defined in the Back-Up Bid);

(d) any Claims and Encumbrances with respect to the Purchased Assets of the Second Lien Agent and the Second Lien Lenders shall be deemed vacated and released in accordance with this Order and the Second Lien Agent and Second Lien Lenders shall receive not receive any distribution pursuant to paragraph 22 herein;

(e) notwithstanding anything to the contrary in the DIP Order, effective as of the entry of this Sale Order, the rights (the "Investigation Rights") of all parties in interest (except the Committee as provided for in that certain Consent Order and Stipulation By and Among the Official Committee of Unsecured Creditors and First and Second Lien Agents Extending Certain Deadline, dated October 7, 2010 (the "Investigation Termination Date Stipulation")) to investigate the validity, perfection, and enforceability of the Prepetition First Liens (as defined in the DIP Order) and the amount and allowability of the First Lien Indebtedness or to assert any other claims or causes of action against any of First Lien Secured Parties (as defined in the DIP Order) shall terminate. The agreements, acknowledgements, releases and stipulations of the First Lien Obligors (as defined in the DIP Order) contained in paragraph F of the DIP Order shall be irrevocably binding on all the estates and all parties in interest (except the Committee but including, without limitation, a receiver, administrator, or trustee appointed in any of the Bankruptcy Cases or any successor case or in any jurisdiction) without further action by any party or this Court, and all parties in interest (except the Committee but including, without limitation, a receiver, administrator, or trustee appointed in any of the Bankruptcy Cases or any successor case or in any jurisdiction) shall thereafter be forever barred from bringing any Challenge (as defined in the DIP Order) with respect to the First Lien Secured Parties. Upon the earlier of the (a) occurrence of the First Lien Payoff pursuant to paragraph 22 herein or (b) consummation of the Back-Up Bid, the Committee's Investigation Rights with respect to the First Lien Secured Parties shall terminate; provided, however, that if a Challenge is timely asserted, the Committee's right to pursue its claims and remedies against the First and Second Lien Agents and their respective lenders is hereby preserved notwithstanding the occurrence of the payoffs set forth in paragraphs 22 and 23 of this Order; and

(f) within one calendar day of termination of the Purchase Agreement, the Debtors shall file a notice with this Court providing that the Purchase Agreement has been terminated and, immediately upon the filing of such termination notice, the Debtors shall be authorized to consummate the Back-Up Bid as provided for herein without further notice, motion or application to, order of, or hearing before this Court.

40.     Retention of Jurisdiction. This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Seller or the other Debtors are a party or which has been assigned by the Seller to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

41.     Order to Govern. To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these Bankruptcy Cases, the terms of this Sale Order shall govern. To the extent there are any inconsistencies between the terms of this Sale Order and the Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

Dated: October 8, 2010
       Wilmington, Delaware

The Honorable Mary F. Walrath
United States Bankruptcy Judge

## EXHIBIT A

**Purchase Agreement**